105.     In addition to the above, as a matter of practice, Kindred knowingly made, caused to be made, or used false records and statements within the medical records of numerous residents to support and mask its false claims for payment and certifications of compliance. Such conduct also violated 31 U.S.C. § 3729(a)(1)(B).

## A.     THE AMOUNT OF DAILY PAYMENT TO KINDRED UNDER MEDICARE AND MOST MEDICAID PROGRAMS HINGED UPON ACCURATE REPORTING ON THE MDS FORM

106.     Medicare and the Alabama, Arizona, California, Connecticut, Colorado, Georgia, Indiana, Idaho, Kentucky, Maine, Massachusetts, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Utah, Vermont, Virginia, Washington, and Wisconsin Medicaid programs paid Kindred and other nursing home providers a predetermined daily amount on a per resident, per day basis. The per diem rate for each Medicare and Medicaid resident was determined, in part for Medicare and for most Medicaid programs, by the MDS assessment that was a *prerequisite to payment* for all Medicare and Medicaid claims.

107.     The Medicare program uses a prospective payment system ("PPS") to pay a predetermined daily rate to nursing homes (also called a per diem payment). *See* 63 Fed. Reg. 26,252, 26,259-60 (May 12, 1998). The Alabama, Arizona, California, Connecticut, Colorado, Georgia, Indiana, Idaho, Kentucky, Maine, Massachusetts, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Utah, Vermont, Virginia, Washington, and Wisconsin Medicaid programs use a similar per diem payment system.[38]

---

[38] As previously noted, these states adjust the daily Medicaid payment amount based on the facilities CMS.

108.     Medicare and Medicaid programs adjust the per diem rate based on a variety of factors.  Medicare and most Medicaid programs recognize the differences in resources utilized by residents in determining a range of per diem reimbursement rates.  Some residents require total assistance with their activities of daily living, while others require less assistance.  The recognition of these differences forms the premise for Medicare's and most Medicaid programs' "case-mix" adjustment to the per diem rate which alters the reimbursement amount based on the resource needs of each resident in a particular nursing home.  Residents with heavy care needs require more staff resources, and payment levels are higher than for those with less intensive care needs.  In a case-mix adjusted payment system, the amount of reimbursement to a nursing home is based on the resource intensity of the resident as measured by items on the MDS, including *Section G*.[39]

109.     Accordingly, insomuch as these MDS ADLs are used to classify each resident into different case-mix categories called Resource Utilization Groups ("RUGs"), Kindred's coding of residents' needs and services provided directly influenced the amount of its Medicare and most Medicaid payments.

### B.     RELATIONSHIP BETWEEN MDS, RUGS, AND KINDRED'S MEDICARE PER DIEM PAYMENTS

110.     The daily PPS/per diem rate that Medicare and the Arizona, Colorado, Georgia, Indiana, Idaho, Kentucky, Maine, Massachusetts, Montana, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, Ohio, Pennsylvania, Utah, Vermont, Virginia, Washington, and Wisconsin Medicaid programs pay a nursing facility depends, in part, on the RUG to which a resident is assigned which, as stated above, is calculated off a resident's MDS.  Each distinct

---

[39] CMS's RAI Version 3.0 Manual, Chapter 6, *Medicare Skilled Nursing Facility Prospective Payment System (SNF PPS)*.

RUG is intended to reflect the anticipated costs associated with providing nursing and rehabilitation services to beneficiaries (*i.e.*, residents) with similar characteristics or resource needs. The number of possible RUGs categories and the corresponding payment rate depends on whether RUG-III or RUG-IV was in effect. For Medicare, for example, from January 1, 2006, to October 1, 2010, there were 53 RUGs in the RUG-III classification system. *See* 70 Fed. Reg. 45026 to 45031 (Aug. 4, 2005). After October 1, 2010, Medicare began the implementation of RUG-IV which recognized 66 possible resident classifications and payment rates. Regardless of whether payment was based on a RUG-III or RUG-IV classification, at all times material to this case, the per diem rate for Medicare and most Medicaid programs for each of the 53 to 65 RUGs categories[40] was based on CMS-initiated nursing home staff time measurement studies and estimated cost for required care.

111.    The RUG-IV classification system has eight major classification categories: (1) Rehabilitation Plus Extensive Services, (2) Rehabilitation, (3) Extensive Services, (4) Special Care High, (5) Special Care Low, (6) Clinically Complex, (7) Behavioral Symptoms and Cognitive Performance Problems, and (8) Reduced Physical Function. All eight major categories, except for Extensive Services, are further subdivided based on the resident's *late loss* ADL score which enables Medicare (and/or a Medicaid program) to distinguish those nursing home residents requiring more care and therefore requiring more resources.[41]

---

[40] CMS has made certain modifications to the RUG-III structure through its RUG-IV classification system, which became effective October 1, 2010. CMS added new clinical RUG categories, modified the timeframe in which each assessment must be performed, required that nursing facilities assess changes in the level of therapy every seven days, and revised certain rules pertaining to group therapy, among other changes. 74 Fed. Reg. 40288 (Aug. 11, 2009).

[41] CMS's RAI Version 3.0 Manual, Chapter 6.3, *Resource Utilization Groups Version IV (RUG-IV)*. Additionally, the Special Care High, Special Care Low, and Clinically Complex categories are also divided by the presence of depression. Finally, the Behavioral Symptoms and Cognitive Performance Problems and the Reduced Physical Function categories are divided by the provision of restorative nursing services.

112.    In addition to reflecting a resident's rehabilitation therapy needs and special clinically complexities, each RUG also takes into account each resident's ability to perform and the staff support provided for the following four activities of daily living ("ADLs"): (1) toileting, (2) bed mobility, (3) transferring in and out of bed or chair, and (4) eating.   These four ADL activities are known as "late-loss" ADLs because of the fact that they are generally the last physical functions to be lost in the cycle of life.  For RUGs classification purposes, each resident received a "*late loss*" ADL score[42] that is based on the resident's dependency levels and staff support that Kindred provided in *Section G* of the MDS.  For example, a very dependent resident who (a) could not toilet, change position in bed, or transfer without assistance and (b) was provided 2-person staff support would receive the maximum "*late loss*" ADL score of 4 for each of these three *late loss* ADLs or a total *late loss* score of 12 (not including feeding).[43] Significantly, to obtain the highest "*late loss*" ADL score, highest RUG code, and largest Medicare (and/or Medicaid) reimbursement, a nursing home must claim in *Section G* of the MDS that the resident was provided the assistance of two staff members for a number of these "*late loss*" ADLs.  In sum, the extent of the "*late loss*" ADL services required by a resident and actually provided by staff significantly impacts the resident's RUGs classification and the nursing home's corresponding payment from Medicare and most Medicaid programs.

113.    The table below contains the October 1, 2012 RUG adjusted[44] rates paid by Medicare for nursing homes operated in Louisville, Jefferson County, Kentucky — the site of

---

[42] CMS recognizes that the "*late loss*" ADL score is "very important component of the classification process." "Other ADLs are also very important, but the research indicates that the *late loss* ADLs predict resource use most accurately." *See* CMS RAI Version 3.0 Manual, CH 6: Medicare SNF PPS, page 6-24.

[43] Under MDS 2.0 which was in effect until October 1, 2010, the possible *late loss* ADL scoring ranged from 4 to 18.  Under MDS 3.0, the *late loss* ADL scoring ranged/ranges from 0 -16.

[44] Medicare makes annual adjustments to RUGs rates based on but on locality and wage index. *See* 42 U.S.C § 1395yy(e)(4)(E)(ii)(IV).

Kindred's corporate headquarters. The first column identifies each of the 8 major RUG Categories that are associated with a rehabilitation level or clinical needs grouping. The second column provides an abbreviated description of the rehabilitation or clinical basis for the RUG grouping, and the third column provides the specific RUG payment classification utilizing a three letter code. Column four provides a breakdown of the possible MDS *"late loss"* ADL Scores for each RUG billing code, and the fifth and final column provides the corresponding per diem rate for each RUG classification.

| Major RUG Category | RUG Description | RUG Billing Code | MDS *Late Loss* ADL Scores | RUG Daily Rate |
|---|---|---|---|---|
| 1 | RU (Rehab Ultra-High) | RUX | 11 to 16 | $692.25 |
| | RU (Rehab Ultra-High) | RUL | 2 to 10 | $677.15 |
| 2 | RU (Rehab Ultra-High) | RUC | 11 to 16 | $524.80 |
| | RU (Rehab Ultra-High) | RUB | 6 to 10 | $524.80 |
| | RU (Rehab Ultra-High) | RUA | 0 to 5 | $438.81 |
| | RV (Rehab Very High) | RVX | 11 to 16 | $616.15 |
| | RV (Rehab Very High) | RVL | 2 to 10 | $552.79 |
| | RV (Rehab Very High) | RVC | 11 to 16 | $450.22 |
| | RV (Rehab Very High) | RVB | 6 to 10 | $389.87 |
| | RV (Rehab Very High) | RVA | 0 to 5 | $388.37 |
| | RH (Rehab High) | RHX | 11 to 16 | $558.24 |
| | RH (Rehab High) | RHL | 2 to 10 | $497.91 |
| | RH (Rehab High) | RHC | 11 to 16 | $392.30 |
| | RH (Rehab High) | RHB | 6 to 10 | $353.09 |
| | RH (Rehab High) | RHA | 0 to 5 | $310.84 |
| | RM (Rehab Medium) | RMX | 11 to 16 | $512.08 |
| | RM (Rehab Medium) | RML | 2 to 10 | $469.85 |
| | RM (Rehab Medium) | RMC | 11 to 16 | $344.64 |
| | RM (Rehab Medium) | RMB | 6 to 10 | $323.52 |
| | RM (Rehab Medium) | RMA | 0 to 5 | $266.20 |
| | RL (Rehab Low) | RLX | 2 to 16 | $449.72 |
| | RL (Rehab Low) | RLB | 11 to 16 | $335.07 |
| | RL (Rehab Low) | RLA | 0 to 10 | $215.90 |
| 3 | ES (Extensive Services) | ES3 | 2 to 16 | $632.00 |

| Major RUG Category | RUG Description | RUG Billing Code | MDS *Late Loss* ADL Scores | RUG Daily Rate |
|---|---|---|---|---|
| | ES (Extensive Services) | ES2 | 2 to 16 | $494.73 |
| | ES (Extensive Services) | ES1 | 2 to 16 | $441.92 |
| 4 | (Special Care High) | HE2 | 15 to 16 | $426.84 |
| | (Special Care High) | HD2 | 11 to 14 | $399.68 |
| | (Special Care High) | HC2 | 6 to 10 | $377.07 |
| | (Special Care High) | HB2 | 2 to 5 | $372.53 |
| | (Special Care High) | HE1 | 15 to 16 | $354.43 |
| | (Special Care High) | HD1 | 11 to 14 | $333.32 |
| | (Special Care High) | HC1 | 6 to 10 | $315.21 |
| | (Special Care High) | HB1 | 2 to 5 | $312.20 |
| 5 | (Special Care Low) | LE2 | 15 to 16 | $387.62 |
| | (Special Care Low) | LD2 | 11 to 14 | $372.53 |
| | (Special Care Low) | LC2 | 6 to 10 | $327.28 |
| | (Special Care Low) | LB2 | 2 to 5 | $310.68 |
| | (Special Care Low) | LE1 | 15 to 16 | $324.26 |
| | (Special Care Low) | LD1 | 11 to 14 | $312.20 |
| | (Special Care Low) | LC1 | 6 to 10 | $275.99 |
| | (Special Care Low) | LB1 | 2 to 5 | $263.91 |
| 6 | (Clinically Complex) | CE2 | 15 to 16 | $345.37 |
| | (Clinically Complex) | CD2 | 11 to 14 | $327.28 |
| | (Clinically Complex) | CC2 | 6 to 10 | $286.55 |
| | (Clinically Complex) | CB2 | 2 to 5 | $265.43 |
| | (Clinically Complex) | CA2 | 0 to 1 | $224.70 |
| | (Clinically Complex) | CE1 | 15 to 16 | $318.22 |
| | (Clinically Complex) | CD1 | 11 to 14 | $300.13 |
| | (Clinically Complex) | CC1 | 6 to 10 | $265.43 |
| | (Clinically Complex) | CB1 | 2 to 5 | $245.82 |
| | (Clinically Complex) | CA1 | 0 to 1 | $209.62 |
| 7 | (Behavior Symptoms and Cognitive Performance) | BB2 | 2 to 5 | $238.27 |
| | (Behavior Symptoms and Cognitive Performance) | BA2 | 0 to 1 | $197.55 |
| | (Behavior Symptoms and Cognitive Performance) | BB1 | 2 to 5 | $227.71 |
| | (Behavior Symptoms and Cognitive Performance) | BA1 | 0 to 1 | $188.50 |
| 8 | (Reduced Physical Functioning) | PE2 | 15 to 16 | $318.22 |
| | (Reduced Physical Functioning) | PD2 | 11 to 14 | $300.13 |
| | (Reduced Physical Functioning) | PC2 | 6 to 10 | $257.89 |
| | (Reduced Physical Functioning) | PB2 | 2 to 5 | $218.67 |

| Major RUG Category | RUG Description | RUG Billing Code | MDS *Late Loss* ADL Scores | RUG Daily Rate |
|---|---|---|---|---|
| | (Reduced Physical Functioning) | PA2 | 0 to 1 | $180.95 |
| | (Reduced Physical Functioning) | PE1 | 15 to 16 | $303.14 |
| | (Reduced Physical Functioning) | PD1 | 11 to 14 | $285.03 |
| | (Reduced Physical Functioning) | PC1 | 6 to 10 | $245.82 |
| | (Reduced Physical Functioning) | PB1 | 2 to 5 | $209.62 |
| | (Reduced Physical Functioning) | PA1 | 0 to 1 | $173.40 |

*Table 4*: *RUG Rates for Jefferson County, Kentucky—October 1, 2012*

114.    The RUG billing is incorporated into the Health Insurance Prospective Payment System (HIPPS) code that Kindred submits to Medicare (or to the Medicaid programs in Arizona, Colorado, Georgia, Indiana, Idaho, Kentucky, Maine, Massachusetts, Montana, Nebraska, Nevada, New Hampshire, North Carolina, Ohio, Pennsylvania, Utah, Vermont, Virginia, Washington, and Wisconsin) and would affect the amount paid to Kindred.

115.    Kindred used CMS software, or private software developed with the CMS tools, to encode and electronically transmit to Medicare and/or Medicaid its residents' most current MDS assessment data and to automatically convert the data into a RUG billing group/HIPPS code which it submitted per resident on at least a monthly basis as part of its request for payment.    In the PPS/per diem claims submitted by Kindred to Medicare and Medicaid programs, the first three characters in the HIPPS code matched the RUG billing code and the last two characters defined the applicable payment periods and the type of assessment.

116.    Accordingly, submission of false MDS forms were also false statements that caused Medicare and the Arizona, Colorado, Georgia, Indiana, Idaho, Kentucky, Maine, Massachusetts, Montana, Nebraska, Nevada, New Hampshire, North Carolina, Ohio, Pennsylvania, Utah, Vermont, Virginia, Washington, and Wisconsin Medicaid programs to pay Kindred in excess of what Kindred was actually entitled to receive.

## VIII. KINDRED FINANCED ITS EXPANSION STRATEGY, DEBT, AND OVERHEAD BY STEALING FROM THE GOVERNMENT

117.    During the time period described above in which Kindred has conspired to defraud the government of millions of dollars in Medicare and Medicaid reimbursements, its revenues and returns on investment have grown to record levels. As part of its corporate strategy to diversify and expand its long-term care brand, Kindred has gobbled up long-term care hospitals, hospice, and rehabilitation therapy businesses across the country. The aggressive growth and diversification of this Fortune 500 company was financed on the back of the nursing home Medicare and Medicaid reimbursement system. The immense debt that funded Kindred's expansion was raised, secured, and serviced by its strong nursing home cash flows provided primarily by the Medicare and Medicaid systems or, more precisely, taxpayers. Rather than deploying its Medicare and Medicaid funds in a manner to ensure that the most basic needs of its vulnerable residents were met, Kindred diverted taxpayer dollars specifically earmarked for nursing home care to fund its purchase of non-nursing home related businesses, to pay for massive corporate administrative expenses and maintain compliance with its stringent financial covenants with lenders that prescribed specific EBITDA/EBITDAR targets and other financial ratios for its nursing home operations. This scheme siphoned off critical Medicare and Medicaid dollars from nursing homes that could have paid for critically needed nurse aide staffing throughout the timeframe of 2008 to the present. For example, rather than using such funds, as intended (to provide care to meet the needs of its residents), Kindred reallocated and repurposed these resources to pay in part for Kindred's:

    a.    Bloated corporate overhead and home office cost in excess of $1.1 Billion from 2008 through 2014 ($133 Million in 2008; $135 Million in 2009, $134 Million in

2010, $175 Million in 2011, $179 Million in 2012, $176 Million in 2013, and $201 Million in 2014);[45]

b. Self-dealing through its related-party subsidiaries and internal corporate charges that drained over $2.0 Billion from the conglomerate's nursing home revenue stream between 2008 and 2014;[46]

c. Lavish compensation and performance bonuses paid to the top senior executives despite the fact that Kindred's revenue stream primarily derived from government funding;[47]

d. Costly private, corporate jet travel across the United States,[48] and

e. Substantial indebtedness totaling $1.6 Billion as of December 31, 2013[49] that was not only incurred to support Kindred's aggressive growth and diversification strategy but also required it to:

    i. Dedicate a substantial portion of the cash flows, including those from Kindred's nursing home operations, to make debt service payments on this indebtedness (Kindred's annual interest expense alone has grown fifteen fold since 2010 from $7 Million to $107 Million in 2012 and $108 Million in 2013),[50] and

---

[45] *See* Kindred's SEC 10-K Annual Reports for fiscal year ending December 31, 2008 to 2014.

[46] *See* Skilled Nursing Facility and Skilled Nursing Facility Healthcare Complex Cost Report and worksheets for all individual Kindred nursing homes from 2008 to most currently available.

[47] *See* Kindred's SEC 10-K Annual Reports for fiscal year ending December 31, 2008 to 2014.

[48] *See* the locations and frequency of Kindred's private corporate jet travel across the United States at http://projects.wsj.com/jettracker/#a=&d=&e=2011-01-01&m=grouped&o=KINDRED+HEALTHCARE+INC&p=0&s=2007-01-01&sort=d&t=N196SB&v=table

[49] *See* Kindred's SEC 10-K Annual Reports for fiscal year ending December 31, 2013.

[50] *See* Kindred's SEC 10-K Annual Reports for fiscal years ending December 31, 2010, 2012, 2013, and 2014.

ii. Comply with the restrictive covenants contained in the loan agreements governing its $1.6 Billion debt which included significant operating limitations on how nursing home revenues were used, imposed through a variety of financial thresholds and ratios—the breach of which subjected Kindred to default.[51]

118. Furthermore, Kindred's willingness to drain revenues from nursing home operations in order to support the expansion of its non-nursing-home-related businesses is seen in its May 30, 2013 Credit Agreement with JP Morgan. There, Kindred pledged the resources of over 250 of its subsidiaries, including its nursing home operators as "Restricted Guarantors," to service and secure *all of Kindred's debt*, regardless of which Kindred sector used the borrowed money to expand. As guarantors, these subsidiaries were obligated "to maintain working capital, equity capital or any other financial statement condition or liquidity of the primary obligor so as to enable the primary obligor to pay such Indebtedness or other obligation." In short, not only were taxpayers and nursing home residents ultimately saddled with the cost of this complex transaction, they were also hobbled by Defendants' staggering corporate overhead, related-party transactions, immense debt service payments and restrictive loan covenants which drained vital funds from each nursing home.

---

[51] *For example, see Term Loan Credit Agreement* between Kindred and JP Morgan Chase Bank, et. al, dated June 1, 2011, wherein Article 6, Section 6.01--Financial Ratios, prescribes that Kindred's consolidated EBITDAR divided by its consolidated fixed charges (interest expense plus rent expense) will not be less than a ratio of 1.25 to 1 or be subject to default under Article 8. Accordingly, Kindred contractually bound itself to a loan agreement that potentially conflicted with its obligation to utilize its nursing home resources effectively and efficiently to meet the care needs of residents under the Social Security Act §§ 1819(d)(1) and 1919(d)(1). Clearly, as Kindred's financial ratios dropped closer to the loan's default line (1.25 to 1), the more pressure Kindred was under to reduce its nursing home resource expenditures and/or to increase its nursing home revenues.

## IX. KINDRED'S CORPORATE STRUCTURE

119.   Defendants Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc.; Kindred Healthcare Services, Inc.; Kindred Nursing Centers, East, LLC; Kindred Nursing Centers West, LLC; Kindred Nursing Centers South, LLC; and Kindred Nursing Centers North, LLC *directly participated* in the false claim violations described above at the subject nursing homes by:

a.   requiring Kindred nursing homes to increase their occupancy rates and target high acuity residents, whose needs were well beyond the care capabilities of the nursing home's staff;

b.   directing Kindred's nursing homes to:  (i) recruit and admit high acuity residents and increase resident; and (ii) retain residents whose needs exceeded the qualification and care capability of the nursing home staff;

c.   determining and controlling at each Kindred nursing home:  (i) the numbers of staff and hours of labor at each facility, (ii) the expenditures for labor, (iii) the revenue targets, census targets and payor-mix targets, and (iv) resident recruitment strategies and discharge practices;

d.   overriding the decisions of nursing home administrators, department heads and licensed nursing staff charged with the legal responsibility for determining the staffing necessary to meet the needs of residents; and

e.   submitting claims for payment on behalf of its nursing homes and centrally controlling the claims and reimbursement process at each nursing home.

120.   Further, Defendants and the nursing homes listed in *Exhibits 1-2* were the alter egos of one another, each forming a part of a single entity.  Defendants exerted pervasive and

continual control over the nursing homes listed in *Exhibits 1-2* such that the nursing homes were mere agents, instrumentalities and conduits through which Defendants did business.

121.    Kindred Healthcare, Inc. filed consolidated financial statements and consolidated statements of operations of its subsidiaries with the Securities and Exchange Commission. Such consolidation was proper pursuant to Generally Accepted Accounting Standards because Kindred Health Care, Inc. controlled the other named subsidiary entities. More specifically, each of wholly-owned nursing homes subsidiary identified in *Exhibits 1 and 2* were mere instrumentalities or conduits through which Kindred Healthcare, Inc. did business.[52]

122.    Furthermore, at all times material, Defendants treated the funds of one entity as the funds of another. Defendants collected, distributed and shared the revenues, profits, and assets of its nursing homes. They also continually siphoned all the revenues from each of the individual nursing homes including those listed in *Exhibits 1-2* into a centralized master account. Additionally, Defendants diverted revenues away from nursing homes to related business entities. Without control of their revenues and with no significant assets, Kindred's nursing homes were entirely dependent on Defendants for their continued existence and ongoing operations.

123.    Each of Kindred's nursing homes were grossly undercapitalized with essentially all cash generated by the nursing home's operations swept into accounts controlled by the Defendants. The Defendants collected and managed all revenues created by operations of its nursing homes and controlled all of their expenditures.

---

[52] For example in the *Corchaine*, Commonwealth of Massachusetts Superior Court Case No 2012-0267, Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc. and Kindred Nursing Centers East LLC stipulated that they were doing business as Kindred Transitional Care and Rehabilitation-Malborough and acknowledged that they should be considered a single entity.

124. Defendants and the nursing homes portrayed themselves as a single entity, publicly promoting themselves as a unified nation-wide operation through brochures, marketing materials, website, communications with the media, as well as correspondence to state licensing and certification agencies. Kindred Healthcare, Inc. is a vertically-integrated company that uses "Kindred" as a brand, often branding its facilities by using Kindred in their name and inserting Kindred's logo throughout facility policies, procedures, and forms, as well as the medical records of residents. Kindred Healthcare, Inc. holds the trademark for the Kindred logos that are found on virtually all its nursing homes' signs, advertisements, medical records, policies, contracts, and websites.

125. Defendants also provided a broad range of administrative, consulting, and support services to Kindred's nursing homes, including accounting and administrative services, auditing, compliance services, cost report preparation and audit representation, legal services, operational consulting and oversight support, and local, state, and federal tax preparation.

126. Accordingly, there is and was sufficient unity of interest and ownership among and between each Defendant and the subject nursing homes, such that the acts of one were for the benefit of and could be imputed to all others. Further, at all times herein mentioned, each Defendant acted as the agent and partner of, conspired and participated in a joint venture with the remaining Defendants. Furthermore, in engaging in the conduct described below, the Defendants all acted with the express or implied knowledge, consent, authorization, approval, and/or ratification of their Co-Defendants.

## X. COUNTS

### COUNT ONE
### Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

127.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

128.     This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

129.     By virtue of the conduct described above, Defendants knowingly, deliberately, and/or in reckless disregard of the truth presented or caused to be presented to Medicare, Medicaid and other Government funded health insurance programs and/or to the contractors that ran these programs on behalf of the Government false or fraudulent claims for the improper payment or approval of nursing home services.

130.     Defendants knowingly, deliberately, and/or in reckless disregard of the truth, supported and continue to support claims to Medicare, Medicaid and other Government funded health insurance programs and/or to the contractors that ran these programs on behalf of the Government false or fraudulent claims for the improper payment or approval of nursing home services.

131.     The United States and its contractors, unaware of the falsity or fraudulent nature of the claims that the Defendants caused to be submitted, paid for claims that otherwise would not have been allowed.

132.     By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWO
## Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B)

133.   Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

134.   This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

135.   By virtue of the conduct described above, Defendants knowingly made, used, or caused to be made or used false statements material to false or fraudulent claims submitted to Medicare, Medicaid and other Government funded health insurance programs and/or to the contractors that ran these programs on behalf of the Government false or fraudulent claims for the improper payment or approval of nursing home services.

136.   Defendants knowingly, deliberately, and/or in reckless disregard of the truth, supported and continue to support claims to Medicare, Medicaid and other Government funded health insurance programs and/or to the contractors that ran these programs on behalf of the Government false or fraudulent claims for the improper payment or approval of nursing home services.

137.   The United States and its contractors, unaware of the falsity of the statements made, used, or caused to be made or used by Defendants, paid for claims that otherwise would not have been allowed.

138.   By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

## COUNT THREE
## California False Claims Act, Cal. Gov't Code § 12651(a)(1)

139.   Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

140.    This is a claim for treble damages and civil penalties under the California False Claims Act. Cal. Gov't Code § 12651 *et seq.*

141.    By virtue of conduct described above, Defendants knowingly presented or caused to be presented to the California Medicaid Program (i.e., Medi-Cal) false or fraudulent claims for improper payment for nursing home services.

142.    The California Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendant, paid for claims that otherwise would not have been allowed.

143.    By reason of these payments, the California Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

**COUNT FOUR**
**Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 (1)(a)**

144.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

145.    This is a claim for treble damages and civil penalties under the Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5, *et seq.*

146.    By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Colorado Medicaid Program false or fraudulent claims for payment or approval for improper payment for nursing home services.

147.    The Colorado Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

148.    By reason of these payments, the Colorado Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

**COUNT FIVE**
**Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 (1)(b)**

149.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

150. This is a claim for treble damages and civil penalties under the Colorado Medicaid False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5, *et seq.*

151. By virtue of the conduct described above, Defendants knowingly made, used or caused to made or used false records or statements material to a false or fraudulent claim made to the Colorado Medicaid Program for improper payment for nursing home services.

152. The Colorado Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

153. By reason of these payments, the Colorado Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT SIX
### Connecticut False Claims Act, Conn. Gen. Stat. § 17B-301B(a)(1)

154. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

155. This is a claim for treble damages and civil penalties under the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301b, *et seq.*

156. By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Connecticut Medicaid Program false or fraudulent claims for improper payment for nursing home services.

157. The Connecticut Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

158. By reason of these payments, the Connecticut Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT SEVEN
## Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301b(a)(2)

159.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

160.    This is a claim for treble damages and civil penalties under the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301b, *et seq.*

161.    By virtue of the conduct described above, Defendants knowingly made, used or caused to made or used false records or statements material to a false or fraudulent claim made to the Connecticut Medicaid Program false or fraudulent claims for improper payment for nursing home services.

162.    The Connecticut Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendant, paid for claims that otherwise would not have been allowed.

163.    By reason of these payments, the Connecticut Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT EIGHT
## Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.1(a)(1)

164.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

165.    This is a claim for treble damages and civil penalties under the Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.1(a)(1).

166.    By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Georgia Medicaid program false or fraudulent claims for improper payment for nursing home services.

167.    Georgia, unaware of the falsity or fraudulent nature of the claims that the Defendants caused to be submitted, paid for claims that otherwise would not have been allowed.

168. By reason of these payments, Georgia has been damaged, and continues to be damaged, in a substantial amount.

## COUNT NINE
### Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.1(a)(2)

169. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

170. This is a claim for treble damages and civil penalties under the Georgia False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.1(a)(2).

171. By virtue of the conduct described above, Defendants knowingly made, used, or caused to be made or used false statements material to false or fraudulent claims for improper payment for nursing home services.

172. Georgia, unaware of the falsity of the statements made, used, or caused to be made or used by Defendants, paid for claims for nursing home services that otherwise would not have been allowed.

173. By reason of these payments, Georgia has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TEN
### Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-121(a)(1)

174. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

175. This is a claim for treble damages and civil penalties under the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-121(a)(1).

176. By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Georgia Medicaid program and other government funded health insurance programs false or fraudulent claims for improper payment for nursing home services.

177. Georgia, unaware of the falsity or fraudulent nature of the claims that the Defendants caused to be submitted, paid for claims that otherwise would not have been allowed.

178. By reason of these payments, Georgia has been damaged, and continues to be damaged, in a substantial amount.

**COUNT ELEVEN**
**Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-121(a)(2)**

179. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

180. This is a claim for treble damages and civil penalties under the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-121(a)(2).

181. By virtue of the conduct described above, Defendants knowingly made, used, or caused to be made or used false statements to the Georgia Medicaid program and other government funded health insurance programs material to false or fraudulent claims for improper payment for nursing home services.

182. Georgia, unaware of the falsity of the statements made, used, or caused to be made or used by Defendants, paid for claims that otherwise would not have been allowed.

183. By reason of these payments, Georgia has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWELVE
### Indiana False Claims and Whistleblower Protection Act,
### Indiana Code § 5-11-5.5-2(b)(1)

184.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

185.     This is a claim for treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5.

186.     By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Indiana Medicaid Program false or fraudulent claims for improper payment for nursing home services.

187.     The Indiana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

188.     By reason of these payments, the Indiana Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT THIRTEEN
### Indiana False Claims and Whistleblower Protection Act,
### Indiana Code § 5-11-5.5-2(b)(2)

189.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

190.     This is a claim for treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5.

191.     By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used a false record or stamen to obtain payment or approval of a false claim from the Indiana Medicaid Program false or fraudulent claims for improper payment for nursing home services.

192.     The Indiana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendant, paid for claims that otherwise would not have been allowed.

By reason of these payments, the Indiana Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT FOURTEEN
### Massachusetts False Claims Act, Mass. Ann. Laws Ch. 12, § 5(B)

193.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

194.    This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act. Mass. Ann. Laws ch. 12, § 5(B)(a)(1).

195.    By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Massachusetts Medicaid Program false or fraudulent claims for improper payment for nursing home services.

196.    The Massachusetts Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

197.    By reason of these payments, the Massachusetts Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT FIFTEEN
### Massachusetts False Claims Act, Mass. Ann. Laws Ch. 12, § 5(B)

198.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

199.    This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act. Mass. Ann. Laws ch. 12, § 5(B)(a)(2).

200.    By virtue of the conduct described above, Defendants knowingly made, used or caused to made or used a false record or statement material to a claim made to Massachusetts Medicaid Program false or fraudulent claims for improper payment for nursing home services.

201.   The Massachusetts Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

202.   By reason of these payments, the Massachusetts Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT SIXTEEN
### Montana False Claims Act, Mont. Code Ann. § 17-8-403(1)(a)

203.   Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

204.   This is a claim for treble damages and civil penalties under the Montana False Claims Act. Mont. Code Anno. § 17-8-401 *et seq.*

205.   By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Montana Medicaid Program false or fraudulent claims for nursing homes services.

206.   The Montana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

207.   By reason of these payments, the Montana Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT SEVENTEEN
### Montana False Claims Act, Mont. Code Ann. § 17-8-403(1)(b)

208.   Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

209.   This is a claim for treble damages and civil penalties under the Montana False Claims Act. Mont. Code Anno. § 17-8-401 *et seq.*

210. By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the Montana Medicaid Program for nursing homes services.

211. The Montana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

212. By reason of these payments, the Montana Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT EIGHTEEN
### Nevada False Claims Act, Nev. Rev. Stat. § 357.040(1)(a)

213. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

214. This is a claim for treble damages and civil penalties under the Nevada False Claims Act. Nev. Rev. Stat. § 357.010 *et seq.*

215. By virtue of the conduct described above, Defendants knowingly caused to be presented to the Nevada Medicaid Program false or fraudulent claims for improper payment for nursing home services.

216. The Nevada Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

217. By reason of these payments, the Nevada Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT NINETEEN
### Nevada False Claims Act, Nev. Rev. Stat. § 357.040(1)(b)

218. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

219. This is a claim for treble damages and civil penalties under the Nevada False Claims Act. Nev. Rev. Stat. § 357.010 *et seq.*

220.     By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the Nevada Medicaid Program for nursing home services.

221.     The Nevada Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

222.     By reason of these payments, the Nevada Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

**COUNT TWENTY**
**New Hampshire Medicaid Fraud and False Claims,**
**N.H. Rev. Stat. Ann. § 167:61–b(I)(a)**

223.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

224.     This is a claim for treble damages and civil penalties under the New Hampshire Medicaid Fraud and False Claims Law, N.H. Rev. Stat. Ann. § 167:61, *et seq.*

225.     By virtue of the conduct described above, Defendants knowingly caused to be presented to the New Hampshire Medicaid Program false or fraudulent claims for improper payment for nursing home services.

226.     The New Hampshire Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

227.     By reason of these payments, the New Hampshire Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

**COUNT TWENTY-ONE**
**New Hampshire Medicaid Fraud and False Claims,**
**N.H. Rev. Stat. Ann. § 167:61–b(I)(a)**

228.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

229.     This is a claim for treble damages and civil penalties under the New Hampshire Medicaid Fraud and False Claims Law, N.H. Rev. Stat. Ann. § 167:61, *et seq.*

230.     By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the New Hampshire Medicaid Program for improper payment for nursing home services.

231.     The New Hampshire Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

232.     By reason of these payments, the New Hampshire Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-TWO
### North Carolina False Claims Act, N.C. Gen. Stat. § 1-605(a)(1)

233.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

234.     This is a claim for treble damages and civil penalties under the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*

235.     By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the North Carolina Medicaid program false or fraudulent claims for payment or approval for nursing home services.

236.     The North Carolina Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

237.     By reason of these payments, the North Carolina Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-THREE
### North Carolina False Claims Act, N.C. Gen. Stat. § 1-605(a)(2)

238.    Relators re-allege and incorporate the allegations contained in the preceding paragraphs of this Complaint.

239.    This is a claim for treble damages and civil penalties under the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*

240.    By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the North Carolina Medicaid program for nursing home services.

241.    The North Carolina Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

242.    By reason of these payments, the North Carolina Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-FOUR
### Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(A) and Tennessee False Claims Act, Tenn. Code Ann. § 4-18-103(a)(1)

243.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

244.    This is a claim for treble damages and civil penalties under the Tennessee Medicaid False Claims Act, and the Tennessee False Claims Act. Tenn. Code Ann. § 71-5-181 *et seq.*; Tenn. Code Ann. § 4-18-101 *et seq.*

245.    By virtue of the conduct described above, Defendants knowingly caused to be presented to the Tennessee Medicaid Program false or fraudulent claims for improper payment for nursing home services.

246.    The Tennessee Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

247. By reason of these payments, the Tennessee Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-FIVE
### Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(B) and Tennessee False Claims Act, Tenn. Code Ann. § 4-18-103(a)(2)

248. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

249. This is a claim for treble damages and civil penalties under the Tennessee Medicaid False Claims Act, and the Tennessee False Claims Act. Tenn. Code Ann. § 71-5-181 *et seq.*; Tenn. Code Ann. § 4-18-101 *et seq.*

250. By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the Tennessee Medicaid Program for nursing home services.

251. The Tennessee Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

252. By reason of these payments, the Tennessee Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-SIX
### Virginia Fraud Against Taxpayers Act, Va. Code Ann. §8.01-216.3(A)(1)

253. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

254. This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act. Va. Code Ann. §8.01-21.6 *et seq.*

255. By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Virginia Medicaid Program false or fraudulent claims for improper payment for nursing home services.

256.    The Virginia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

257.    By reason of these payments, the Virginia Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-SEVEN
### Virginia Fraud Against Taxpayers Act, Va. Code Ann. §8.01-216.3(A)(2)

258.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

259.    This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act. Va. Code Ann. §8.01-21.6 *et seq.*

260.    By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the Virginia Medicaid Program for nursing home services.

261.    The Virginia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

262.    By reason of these payments, the Virginia Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-EIGHT
### Washington Medicaid Fraud False Claims Act,
### Rev. Code Wash. § 74.66.020(1)(a)

263.    Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

264.    This is a claim for treble damages and civil penalties under the Washington Medicaid Fraud False Claims Act, Rev. Code Wash. § 48.80.010 *et seq.*

265.    By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Washington Medicaid Program false or fraudulent claims for payment or approval for nursing home services.

79

266. The Washington Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendant, paid for claims that otherwise would not have been allowed.

267. By reason of these payments, the Washington Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT TWENTY-NINE
### Washington Medicaid Fraud False Claims Act,
### Rev. Code Wash. § 74.66.020(1)(b)

268. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

269. This is a claim for treble damages and civil penalties under the Washington Medicaid Fraud False Claims Act, Rev. Code Wash. § 48.80.010 *et seq.*

270. By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the Washington Medicaid Program for nursing home services.

271. The Washington Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendant, paid for claims that otherwise would not have been allowed.

272. By reason of these payments, the Washington Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## COUNT THIRTY
### Wisconsin False Claims Act, Wis. Stat. § 20.931(2)(a)

273. Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

274. This is a claim for treble damages and civil penalties under the Wisconsin False Claims Act. Wis. Stat. § 20.931 *et seq.*

275.     By virtue of the conduct described above, Defendants knowingly presented or caused to be presented to the Wisconsin Medicaid Program false or fraudulent claims for payment or approval for nursing home services.

276.     The Wisconsin Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

277.     By reason of these payments, the Wisconsin Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

**COUNT THIRTY-ONE**
**Wisconsin False Claims Act, Wis. Stat. § 20.931(2)(b)**

278.     Relators re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

279.     This is a claim for treble damages and civil penalties under the Wisconsin False Claims Act. Wis. Stat. § 20.931 *et seq*.

280.     By virtue of the conduct described above, Defendants knowingly made, used or caused to be made or used false records or statements to get a false claim paid or approved by the Wisconsin Medicaid Program for nursing home services.

281.     The Wisconsin Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

282.     By reason of these payments, the Wisconsin Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

## XI.     REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Relators hereby demand a trial by jury.

**WHEREFORE,** Plaintiffs/Relators, on behalf of themselves, the United States of America and the *Qui Tam* States, demands and prays that judgment be entered as follows against the Defendants under the Federal FCA Counts and under supplemental FCA counts, as follows:

(a)     In favor of the United States against Defendants for treble the amount of damages to the United States, Medicare, Medicaid and other Government Funded Health Insurance Programs, from the false or fraudulent claims for improper payment or approval of nursing home services alleged herein plus the maximum civil penalties (plus interest) for each false claim caused to be submitted, for each false record submitted by Defendants conspiracy to submit false claims;

(b)     In favor of the United States and/or the *Qui Tam* States against the Defendants for disgorgement of the profits earned by the Defendants as a result of their false or fraudulent claims for improper payment or approval of nursing home services alleged herein;

(c)     In favor of Plaintiffs/Relators for the maximum allowed pursuant to 31 U.S.C. §3730(d) to include reasonable expenses, attorney's fees and costs incurred by Plaintiffs/Relators;

(d)     For all costs of this Federal FCA civil action;

(e)     In favor of the Plaintiffs/Relators and the United States for such other relief as this Court deems just and equitable;

(f)     In favor of the Plaintiffs/Relators and the *Qui Tam* states against Defendants in an amount equal to three times the amount of damages that the *Qui Tam* States have sustained as a result of the Defendants' actions, as well as the statutory maximum penalty against the Defendants for each violation of each state's FCA;

(g)     In favor of Plaintiffs/Relators for the maximum amount allowed as Plaintiff/Relator's share pursuant to the *Qui Tam* States FCAs as follows: the California False Claims Act, Cal Govt. Code §12651(a) *et seq.*; Colorado Medicaid False Claims Act, § 25.5-4-303.5, *et seq.*; Connecticut False Claims Act For Medical Assistance Programs, §17b-301, *et*

*seq.*; Georgia False Medicaid Claims Act, GA. Code Ann. §49-4-168.1(a)(1) and §49-4-168.I(A)(2); Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-121(a)(1); Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. § 23-3-121(a)(2); Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-2(b)(1); Indiana False Claims and Whistleblower Protection Act, Indiana Code § 5-11-5.5-2(b)(2); Massachusetts False Claims Act, Mass. Ann. Laws Ch. 12, § 5(B); Massachusetts False Claims Act, Mass. Ann. Laws Ch. 12, § 5(B); Montana False Claims Act, MCA § 17-8-401, *et seq.*); Nevada - Submission Of False Claims to State or Local Government, NRS § 357.010, *et seq.*; New Hampshire False Claims Act, § 167:61-B, *et seq.*; North Carolina False Claims Act, N.C. Gen. Stat. § 1-605(a)(1); North Carolina False Claims Act, N.C. Gen. Stat. § 1-605(a)(2); Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(A) and Tennessee False Claims Act, Tenn. Code Ann. § 4-18-103(a)(1); Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(B) and Tennessee False Claims Act, Tenn. Code Ann. § 4-18-103(a)(2); Virginia Fraud Against Taxpayers Act, Va. Code Ann. §8.01-216.3(A)(1); Virginia Fraud Against Taxpayers Act, Va. Code Ann. §8.01-216.3(A)(2); Washington State Medicaid Fraud False Claims Act, RCW §74.66.005, *et seq.*; and Wisconsin False Claims Act, Wis. Stat. § 20.931(2)(a); and Wisconsin False Claims Act, Wis. Stat. § 20.931(2)(b).

(h)     In favor of the Plaintiffs/Relators for all costs and expenses associated with the supplemental claims of the *Qui Tam* States, including attorney's fees and costs;

(i)     In favor of the *Qui Tam* States and Plaintiffs/Relators for all such other relief as the Court deems just and proper;

(j)     In the event that the United States or any *Qui Tam* State proceeds with this action, Plaintiffs/Relators, be awarded an appropriate amount for disclosing evidence or information that

the United States and/or *Qui Tam* States did not possess when this action was brought to the government. The appropriate amount is not greater than twenty-five percent (25%) of the proceeds of the action or settlement of a claim. The amount awarded to Plaintiffs/Relators also includes the results of government actions or settlement of claims arising from the expansion of claims through the government's further investigation directly generated from or attributable to Plaintiffs/Relators' information; and

(k)     Such other relief as this Court deems just and appropriate.

Dated:  February 11, 2016

Respectfully submitted,

*/s/ Thomas W. Sheridan*
Thomas W. Sheridan
Sheridan & Murray, LLC
424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034
Tel:     215-977-9500
Fax:    215-977-9800

Joseph Trautwein
Joseph Trautwein & Associates, LLC
1777 Sentry Parkway West
Abington Hall, Suite 100
Blue Bell, PA 19422
Tel:     215-764-2301
Fax:    267.464.0400

*Of Counsel*

David Marks
Marks, Balette & Giessel, PC
10000 Memorial Dr., Suite 760
Houston, TX 77025
Tel:     713-681-3070
Fax:    713-681-2811

Mark DiCello
The DiCello Law Firm
7556 Mentor Ave.,
Mentor, OH 44060
Tel:     440-953-8888
Fax:    440-953-9138

# EXHIBIT 1

**Exhibit 1- Kindred Nursing Homes Names**

| Provider # | Kindred Nursing Home Name | Address | City | State | Zip | Applicable Kindred Ownership Dates (During Reviewed Period) | Kindred's Wholly-Owned Designated Corporate Operator | Facility Exhibit Designation |
|---|---|---|---|---|---|---|---|---|
| 15111 | KINDRED TRANSITIONAL CARE & REHAB-BIG SPRINGS | 500 ST. CLAIR AVENUE SOUTHWEST | HUNTSVILLE | AL | 35801 | 11/25/05 to 2/28/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 15116 | KINDRED TRANSITIONAL CARE&REHAB-WHITESBURG GARDENS | 105 TEAKWOOD DRIVE | HUNTSVILLE | AL | 35801 | 11/25/05 to 5/31/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 35094 | KACHINA POINT HEALTH CARE & REHAB CENTER | 505 JACKS CANYON ROAD | SEDONA | AZ | 86351 | 11/25/05 to 2/1/13 | Kindred Nursing Centers West, LLC | Exhibit 1 |
| 56260 | KINDRED NURSING AND HEALTHCARE - BAYBERRY | 1800 ADOBE STREET | CONCORD | CA | 94520 | 2/6/07 to 12/21/15 | Kindred Nursing Centers West, LLC California Nursing Centers, LLC Bayberry Care Center, LLC | Exhibit 1 |
| 65077 | KINDRED TRANSITIONAL CARE AND REHAB-CHERRY | 3575 SOUTH WASHINGTON STREET | ENGLEWOOD | CO | 80110 | 11/25/05 to 5/31/14 | Kindred Nursing Centers West, LLC | Exhibit 1 |
| 75185 | ANDREW HOUSE HEALTHCARE | 66 CLINIC DR | NEW BRITAIN | CT | 06051 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 115115 | SPECIALTY CARE OF MARIETTA | 26 TOWER RD | MARIETTA | GA | 30060 | 11/25/05 to 2013 | | Exhibit 1 |
| 115120 | SAVANNAH HEALTHCARE AND REHABILITATION CENTER | 815 EAST 63 STREET | SAVANNAH | GA | 31405 | 11/25/05 to 2013 | | Exhibit 1 |
| 115132 | KINDRED TRANSITIONAL CARE AND REHAB - ABERCORN | 11800 ABERCORN STREET | SAVANNAH | GA | 31419 | 11/25/05 to 4/30/14 | Kindred Nursing Centers, LP | Exhibit 1 |
| 115360 | KINDRED TRANSITIONAL CARE AND REHAB - LAFAYETTE | 110 BRANDYWINE BOULEVARD | FAYETTEVILLE | GA | 30214 | 11/25/05 to 12/21/15 | Lafayette Health Care Centers, Inc. | Exhibit 1 |
| 135051 | KINDRED NURSING & REHAB - CANYON WEST | 2814 SOUTH INDIANA AVENUE | CALDWELL | ID | 83605 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 1 |
| 155188 | KINDRED TRANSITIONAL CARE AND REHAB-GREENFIELD | 200 GREEN MEADOWS DR | GREENFIELD | IN | 46140 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155193 | KINDRED TRANSITIONAL CARE AND REHAB-GREENWOOD | 377 WESTRIDGE BLVD | GREENWOOD | IN | 46142 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155218 | KINDRED TRANSITIONAL CARE AND REHABILITATION-DYER | 2300 GREAT LAKES DR | DYER | IN | 46311 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155219 | REGENCY PLACE OF SOUTH BEND | 52654 N IRONWOOD RD | SOUTH BEND | IN | 46635 | 11/25/05 to 8/5/13 | | Exhibit 1 |
| 155222 | KINDRED TRANSITIONAL CARE AND REHAB-KOKOMO | 429 W LINCOLN RD | KOKOMO | IN | 46902 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155242 | MUNCIE HEALTH & REHABILITATION CENTER | 4301 N WALNUT ST | MUNCIE | IN | 47303 | 11/25/05 to 5/15/13 | | Exhibit 1 |
| 155243 | REGENCY PLACE OF LAFAYETTE | 300 WINDY HILL DR | LAFAYETTE | IN | 47905 | 11/25/05 to 8/5/13 | | Exhibit 1 |
| 155265 | KINDRED TRANSITIONAL CARE AND REHAB-WEDGEWOOD | 101 POTTERS LN | CLARKSVILLE | IN | 47129 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155272 | KINDRED TRANSITIONAL CARE AND REHAB-CASTLETON | 5226 E 82ND ST | INDIANAPOLIS | IN | 46250 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155312 | KINDRED TRANSITIONAL CARE AND REHAB-INDIAN CREEK | 240 BEECHMONT DR | CORYDON | IN | 47112 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155378 | PARKWOOD HEALTH CARE CENTER | 1001 N GRANT ST | LEBANON | IN | 46052 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 155426 | ROYAL OAKS HEALTH CARE AND REHABILITATION CENTER | 3500 MAPLE AVE | TERRE HAUTE | IN | 47804 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 155474 | KINDRED NURSING AND REHABILITATION-BREMEN | 316 WOODIES LN | BREMEN | IN | 46506 | 11/25/05 to 4/30/14 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155484 | KINDRED TRANSITIONAL CARE AND REHAB-SOUTHWOOD | 2222 MARGARET AVE | TERRE HAUTE | IN | 47802 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155488 | KINDRED TRANSITIONAL CARE AND REHAB-ROLLING HILLS | 3625 ST JOSEPH RD | NEW ALBANY | IN | 47150 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155496 | KINDRED NURSING AND REHABILITATION VALLEY VIEW | 333 W MISHAWAKA RD | ELKHART | IN | 46517 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155657 | KINDRED TRANSITIONAL CARE AND REHAB-HARRISON | 150 BEECHMONT DR | CORYDON | IN | 47112 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155659 | KINDRED TRANSITIONAL CARE AND REHAB-SELLERSBURG | 7823 OLD HWY # 60 | SELLERSBURG | IN | 47172 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 155670 | ANGEL RIVER HEALTH AND REHABILITATION | 5233 ROSEBUD LN | NEWBURGH | IN | 47630 | 11/25/05 to 8/5/13 | | Exhibit 1 |
| 185089 | KINDRED TRANSITIONAL CARE AND REHABILITATION ROSEWOOD | 550 HIGH ST. | BOWLING GREEN | KY | 42101 | 11/25/05 to 3/31/14 | | Exhibit 1 |
| 185118 | KINDRED NURSING AND REHABILITATION-WOODLAND | 1117 WOODLAND DRIVE | ELIZABETHTOWN | KY | 42701 | 11/25/05 to 3/31/14 | | Exhibit 1 |
| 185120 | KINDRED TRANSITIONAL CARE AND REHABILITATION - HILLCREST | 3740 OLD HARTFORD RD | OWENSBORO | KY | 42303 | 11/25/05 to 3/31/14 | | Exhibit 1 |
| 185127 | KINDRED NURSING AND REHABILITATION-DANVILLE | 642 NORTH THIRD STREET | DANVILLE | KY | 40422 | 11/25/05 to 3/31/14 | Kindred Nursing Centers, LP | Exhibit 1 |
| 185142 | HERITAGE MANOR HEALTH CARE CENTER | 401 INDIANA AVE | MAYFIELD | KY | 42066 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 185287 | KINDRED NURSING AND REHABILITATION-HARRODSBURG | 853 LEXINGTON ROAD | HARRODSBURG | KY | 40330 | 11/25/05 to 3/31/14 | Kindred Nursing Centers, LP | Exhibit 1 |
| 225133 | KINDRED TRANSITIONAL CARE & REHAB-BLUEBERRY HILL | 75 BRIMBAL AVENUE | BEVERLY | MA | 01915 | 11/25/05 to 5/1/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225210 | KINDRED NURSING & REHABILITATION-RIVER TERRACE | 1675 NORTH MAIN STREET | LANCASTER | MA | 01523 | 11/25/05 to 5/31/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225230 | KINDRED NURSING & REHAB CENTER - GREAT BARRINGTON | 148 MAPLE AVENUE | GREAT BARRINGTON | MA | 01230 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225242 | KINDRED TRANSITIONAL CARE & REHAB-WESTBOROUGH | 5 COLONIAL DRIVE | WESTBOROUGH | MA | 01581 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225263 | KINDRED TRANSITIONAL CARE & REHABILTIATION-QUINCY | 11 MCGRATH HIGHWAY | QUINCY | MA | 02169 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225320 | KINDRED TRANSITIONAL CARE & REHAB-EAGLE POND | 1 LOVE LANE | SOUTH DENNIS | MA | 02660 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225322 | SACHEM SKILLED NURSING & REHABILITATION CENTER | 66 CENTRAL STREET | EAST BRIDGEWATER | MA | 02333 | 11/25/05 to 6/1/13 | | Exhibit 1 |

| Provider # | Kindred Nursing Home Name | Address | City | State | Zip | Applicable Kindred Ownership Dates (During Reviewed Period) | Kindred's Wholly-Owned Designated Corporate Operator | Facility Exhibit Designation |
|---|---|---|---|---|---|---|---|---|
| 225326 | BOLTON MANOR NURSING & REHABILITATION CENTER | 400 BOLTON STREET | MARLBOROUGH | MA | 01752 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 225332 | COUNTRY REHABILITATION & NURSING CENTER | 180 LOW STREET | NEWBURYPORT | MA | 01950 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 225435 | COLONY HOUSE NURSING & REHABILITATION CENTER | 277 WASHINGTON STREET | ABINGTON | MA | 02351 | 11/25/05 to 6/1/13 | | Exhibit 1 |
| 225444 | KINDRED NURSING & REHAB-BLUE HILLS ALZHEIMER'S | 1044 PARK STREET | STOUGHTON | MA | 02072 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225456 | KINDRED NURSING AND REHABILITATION-DEN-MAR | 44 SOUTH STREET | ROCKPORT | MA | 01966 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225461 | KINDRED TRANSITIONAL CARE & REHAB-FRANKLIN | 130 CHESTNUT STREET | FRANKLIN | MA | 02038 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225483 | KINDRED NURSING AND REHABILITATION-OAKWOOD | 11 PONTIAC AVENUE | WEBSTER | MA | 01570 | 11/25/05 to 5/31/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225512 | KINDRED TRANSITIONAL CARE & REHABILITA-FORESTVIEW | 50 INDIAN NECK ROAD | WAREHAM | MA | 02571 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Forestview Nursing, LLC | Exhibit 1 |
| 225516 | ELIOT HEALTHCARE CENTER | 168 WEST CENTRAL STREET | NATICK | MA | 01760 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 225536 | KINDRED TRANSITIONAL CARE & REHAB-HARRINGTON | 160 MAIN STREET | WALPOLE | MA | 02081 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225549 | KINDRED NURSING & REHABILITATION-BRIGHAM | 77 HIGH STREET | NEWBURYPORT | MA | 01950 | 11/25/05 to 12/31/13 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 225719 | KINDRED TRANSITIONAL CARE & REHAB-HIGHGATE | 10 CAREMATRIX DRIVE | DEDHAM | MA | 02026 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Highgate Nursing, LLC | Exhibit 1 |
| 225737 | KINDRED NURSING & REHABILITATION-HARBORLIGHTS | 804 EAST 7TH STREET | BOSTON | MA | 02127 | 3/15/06 to 12/21/15 | Harborlights Nursing, LLC Kindred Nursing Centers, East, LLC | Exhibit 1 |
| 265288 | TABLEROCK HEALTHCARE | 276 FOUNTAIN LANE | KIMBERLING CITY | MO | 65686 | 11/25/05 to 1/1/11 | | Exhibit 1 |
| 345002 | KINDRED TRANSITIONAL CARE & REHAB-CYPRESS POINTE | 2006 S 16TH ST | WILMINGTON | NC | 28401 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345003 | KINDRED TRANSITIONAL CARE & REHAB-SILAS CREEK | 3350 SILAS CREEK PARKWAY | WINSTON-SALEM | NC | 27103 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345053 | KINDRED TRANSITIONAL CARE & REHAB-PETTIGREW | 1515 W PETTIGREW ST | DURHAM | NC | 27705 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345077 | KINDRED TRANSITIONAL CARE & REHAB-SUNNYBROOK | 25 SUNNYBROOK RD | RALEIGH | NC | 27610 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345104 | KINDRED NURSING & REHABILITATION-ZEBULON | 509 W GANNON AVE | ZEBULON | NC | 27597 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345254 | KINDRED TRANSITIONAL CARE & REHAB-MONROE | 1212 EAST SUNSET DR | MONROE | NC | 28112 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345336 | GUARDIAN CARE OF ROANOKE RAPIDS | 305 FOURTEENTH STREET | ROANOKE RAPIDS | NC | 27870 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 345344 | KINDRED NURSING & REHABILITATION-HENDERSON | 280 SOUTH BECKFORD DR | HENDERSON | NC | 27536 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 345375 | KINDRED NURSING & REHAB-SCOTLAND NECK | 920 JR HIGH SCHOOL RD | SCOTLAND NECK | NC | 27874 | 11/25/05 to 8/5/13 | | Exhibit 1 |
| 305018 | DOVER REHABILITATION AND LIVING CENTER | 307 PLAZA DRIVE | DOVER | NH | 03820 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 305020 | KINDRED NURSING AND REHABILITATION-HANOVER TERRACE | 49 LYME ROAD | HANOVER | NH | 03755 | 11/25/05 to 6/30/14 | | Exhibit 1 |
| 295006 | LAS VEGAS HEALTHCARE AND REHAB CENTER | 2832 S. MARYLAND PARKWAY | LAS VEGAS | NV | 89109 | 11/25/05 to 12/19/12 | | Exhibit 1 |
| 365329 | KINDRED NURSING AND REHABILITATION-COMMUNITY | 175 COMMUNITY DRIVE | MARION | OH | 43302 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 365435 | KINDRED TRANSITIONAL CARE & REHAB-LOGAN | 300 ARLINGTON AVENUE | LOGAN | OH | 43138 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 365636 | KINDRED TRANSITIONAL CARE & REHAB-PICKERINGTON | 1300 HILL ROAD NORTH | PICKERINGTON | OH | 43147 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 365644 | KINDRED TRANSITIONAL CARE & REHAB-WINCHESTER PLACE | 36 LEHMAN DR | CANAL WINCHESTER | OH | 43110 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 365694 | KINDRED TRANSITIONAL CARE AND REHABILITATION - CHILLICOTHE | 60 MARIETTA ROAD | CHILLICOTHE | OH | 45601 | 11/25/05 to 5/1/13 | | Exhibit 1 |
| 365920 | KINDRED NURSING AND REHABILITATION - LEBANON | 700 MONROE ROAD | LEBANON | OH | 45036 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 366225 | KINDRED NURSING & REHAB - STRATFORD | 7000 COCHRAN ROAD | GLENWILLOW | OH | 44139 | 2/8/11 to 12/21/15 | KND Development 51, LLC | Exhibit 1 |
| 395237 | KINDRED TRANSITIONAL CARE AND REHABILITATION-WYOMISSING | 1000 EAST WYOMISSING BLVD | READING | PA | 19611 | 11/25/05 to 6/30/14 | | Exhibit 1 |
| 445075 | MADISON HEALTHCARE AND REHABILITATION CENTER | 431 LARKIN SPRING RD | MADISON | TN | 37115 | 11/25/05 to 8/14/13 | | Exhibit 1 |
| 445136 | KINDRED NURSING AND REHABILITATION-MASTERS | 278 DRY VALLEY RD | ALGOOD | TN | 38501 | 11/25/05 to4/30/14 | Kindred Nursing Centers, LP | Exhibit 1 |
| 445245 | KINDRED NURSING AND REHABILITATION-MARYVILLE | 1012 JAMESTOWN WAY | MARYVILLE | TN | 37803 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 445253 | KINDRED NURSING AND REHABILITATION -LOUDON | 1520 GROVE ST BOX 190 | LOUDON | TN | 37774 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 445286 | KINDRED NURSING AND REHABILITATION- FAIRPARK | 307 N FIFTH ST BOX 5477 | MARYVILLE | TN | 37801 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 445297 | KINDRED HEALTH AND REHABILITATION-NORTHHAVEN | 3300 BROADWAY NE | KNOXVILLE | TN | 37917 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 1 |
| 465006 | WASATCH VALLEY REHABILITATION | 2200 EAST 3300 SOUTH | SALT LAKE CITY | UT | 84109 | 11/25/05 to 10/31/09 | | Exhibit 1 |
| 465055 | KINDRED TRANSITIONAL CARE AND REHABILITATION-FEDERAL HEIGHTS | 41 SOUTH 900 EAST | SALT LAKE CITY | UT | 84102 | 11/25/05 to 1/1/13 | | Exhibit 1 |
| 465064 | KINDRED NURSING AND REHABILITATON - ST GEORGE | 1032 EAST 100 SOUTH | ST GEORGE | UT | 84770 | 11/25/05 to 6/30/14 | Kindred Nursing Centers West, LLC | Exhibit 1 |
| 465110 | CROSSLANDS REHABILITATION AND HEALTHCARE CENTER | 575 EAST 11000 SOUTH | SANDY | UT | 84070 | 11/25/05 to 1/1/13 | | Exhibit 1 |

Page 2

| Provider # | Kindred Nursing Home Name | Address | City | State | Zip | Applicable Kindred Ownership Dates (During Reviewed Period) | Kindred's Wholly-Owned Designated Corporate Operator | Facility Exhibit Designation |
|---|---|---|---|---|---|---|---|---|
| 495241 | KINDRED NURSING AND REHABILITATION-RIVER POINTE | 4142 BONNEY ROAD | VIRGINIA BEACH | VA | 23452 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 1 |
| 475003 | KINDRED TRANSITIONAL CARE & REHAB BIRCHWOOD TERRACE | 43 STARR FARM RD | BURLINGTON | VT | 05408 | 11/25/05 to 12/21/15 |  | Exhibit 1 |
| 475030 | STARR FARM NURSING CENTER | 98 STARR FARM RD | BURLINGTON | VT | 05408 | 11/25/05 to 12/21/15 | Starr Farm Partnership | Exhibit 1 |
| 505304 | KINDRED TRANSITIONAL CARE & REHAB - RAINIER VISTA | 920 12TH AVENUE SOUTHEAST | PUYALLUP | WA | 98372 | 11/25/05 to 5/31/14 | Kindred Nursing Centers West, LLC | Exhibit 1 |
| 505347 | KINDRED TRANSITIONAL CARE & REHAB CENTER- LAKEWOOD | 11411 BRIDGEPORT WAY | TACOMA | WA | 98499 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 1 |
| 525420 | KENNEDY PARK NURSING AND REHAB CENTER | 6001 ALDERSON ST | SCHOFIELD | WI | 54476 | 11/25/05 to 2/1/13 | KINDRED NURSING CENTERS LIMITED PARTNERSHIP | Exhibit 1 |
| 525482 | KINDRED NURSING AND REHAB-BURLINGTON (MOUNT CARMEL MEDICAL | 677 E STATE ST | BURLINGTON | WI | 53105 | 11/25/05 to 5/31/14 | Kindred Nursing Centers, LP | Exhibit 1 |
| 535013 | KINDRED TRANSITIONAL CARE AND REHABILITATION-CHEYENNE | 3128 BOXELDER DRIVE | CHEYENNE | WY | 82001 | 11/25/05 to 9/8/15 | Kindred Nursing Centers West, LLC | Exhibit 1 |

EXHIBIT 2

**Exhibit 2- Kindred Nursing Homes Names (Facilities for Which Additional Staffing Data Is Required)**

| Provider # | Kindred Nursing Home Name | Address | City | State | Zip | Applicable Kindred Ownership Dates (During Reviewed Period) | Kindred's Wholly-Owned Designated Corporate Operator | Facility Exhibit Designation |
|---|---|---|---|---|---|---|---|---|
| 15151 | KINDRED TRANSITIONAL CARE & REHABILITATION-MOBILE | 1758 SPRINGHILL AVE | MOBILE | AL | 36607 | 11/25/05 to 2/15/13 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 35070 | KINDRED TRANSITIONAL CARE AND REHAB-NORTHWEST | 1919 WEST MEDICAL STREET | TUCSON | AZ | 85704 | 11/25/05 to 4/30/14 | | Exhibit 2 |
| 35086 | KINDRED NURSING AND REHABILITATION-HACIENDA | 660 SOUTH CORONADO DRIVE | SIERRA VISTA | AZ | 85635 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 55042 | ALTA VISTA HEALTHCARE | 9020 GARFIELD STREET | RIVERSIDE | CA | 92503 | 11/25/05 to 1/20/10 | Riverside Hawthorne & Wellness Center, LLC | Exhibit 2 |
| 55252 | KINDRED HEALTHCARE CENTER OF ORANGE | 920 WEST LA VETA STREET | ORANGE | CA | 92868 | 11/25/05 to 12/1/09 | | Exhibit 2 |
| 56327 | KINDRED TRANSITIONAL CARE & REHAB - WALNUT CREEK (CARE CENTER OF ROSSMOOR) | 1224 ROSSMOOR PARKWAY | WALNUT CREEK | CA | 94595 | 2/6/07 to 12/21/15 | Care Center of Rossmoor , LLC CNC, LLC | Exhibit 2 |
| 555090 | KINDRED NURSING AND TRANSITIONAL CARE-PACIFIC COAST | 720 EAST ROMIE LANE | SALINAS | CA | 93901 | 2/6/07 to 12/21/15 | Pacific Coast Care Center, LLC California Nursing Centers, LLC Kindred Nursing Centers West, LLC | Exhibit 2 |
| 555256 | CALIFORNIAN CARE CENTER | 2211 MOUNT VERNON AVENUE | BAKERSFIELD | CA | 93306 | 11/25/05 to 12/14/09 | | Exhibit 2 |
| 555356 | KINDRED TRANSITIONAL CARE AND REHAB - CANYONWOOD | 2120 BENTON DRIVE | REDDING | CA | 96003 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 555416 | KINDRED TRANSITIONAL CARE AND REHAB-FOOTHILL | 401 W. ADA AVE. | GLENDORA | CA | 91741 | 11/25/05 to 12/21/15 | Foothill Nursing Company Partnership | Exhibit 2 |
| 555754 | KINDRED TRANSITIONAL CARE AND REHABILITATION-VILLA | 1586 W. SAN MARCOS BLVD | SAN MARCOS | CA | 92069 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 65001 | KINDRED NURSING AND REHABILITATION-AURORA | 10201 EAST THIRD AVENUE | AURORA | CO | 80010 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 65196 | KINDRED HEALTHCARE AND REHABILITATION CENTER OF NORTHGLENN | 401 MALLEY DRIVE | NORTHGLENN | CO | 80233 | 11/25/05 to 4/9/13 | | Exhibit 2 |
| 75011 | KINDRED TRANSITIONAL CARE & REHAB-WINDSOR | 581 POQUONOCK AVE | WINDSOR | CT | 06095 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 75195 | KINDRED TRANSITIONAL CARE & REHAB-PARKWAY PAVILION | 1157 ENFIELD ST | ENFIELD | CT | 06082 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 75196 | CROSSINGS EAST CAMPUS, THE | 78 VIETS ST EXTENSION | NEW LONDON | CT | 06320 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 135019 | KINDRED NURSING & REHAB - NAMPA | 404 NORTH HORTON STREET | NAMPA | ID | 83651 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 135021 | KINDRED TRANSITIONAL CARE & REHAB - LEWISTON | 3315 8TH STREET | LEWISTON | ID | 83501 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 135077 | BOISE HEALTH AND REHABILITATION CENTER | 1001 SOUTH HILTON STREET | BOISE | ID | 83705 | 11/25/05 to 4/9/13 | | Exhibit 2 |
| 135093 | KINDRED NURSING & REHAB - ASPEN PARK | 420 ROWE STREET | MOSCOW | ID | 83843 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 155133 | KINDRED TRANSITIONAL CARE AND REHAB-COLUMBUS | 2100 MIDWAY ST | COLUMBUS | IN | 47201 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 2 |
| 155501 | KINDRED NURSING AND REHABILITATION-MEADOWVALE | 1529 W LANCASTER ST | BLUFFTON | IN | 46714 | 11/25/05 to 4/30/14 | Kindred Nursing Centers, LP | Exhibit 2 |
| 185146 | FOUNTAIN CIRCLE CARE & REHABILITATION CENTER | 200 GLENWAY ROAD | WINCHESTER | KY | 40391 | 11/25/05 to 5/15/13 | | Exhibit 2 |
| 185179 | NORTHFIELD CENTRE FOR HEALTH & REHABILITATION | 6000 HUNTING RD. | LOUISVILLE | KY | 40222 | 11/25/05 to 4/1/13 | | Exhibit 2 |
| 185196 | KINDRED NURSING AND REHABILITATION-BASHFORD | 3535 BARDSTOWN ROAD | LOUISVILLE | KY | 40218 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 2 |
| 185209 | KINDRED NURSING AND REHABILITATION-RIVERSIDE | 190 EAST HWY. 136 | CALHOUN | KY | 42327 | 11/25/05 to 3/31/14 | Kindred Nursing Centers, LP | Exhibit 2 |
| 185294 | KINDRED NURSING AND REHABILITATION-MAPLE | 515 GREENE DRIVE | GREENVILLE | KY | 42345 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 2 |
| 185408 | LIBERTY CARE AND REHABILITATION CENTER | 616 S WALLACE WILKINSON BLVD | LIBERTY | KY | 42539 | 11/25/05 to 8/5/13 | | Exhibit 2 |
| 225170 | KINDRED NURSING AND REHABILITATION-WALDEN | 785 MAIN STREET | WEST CONCORD | MA | 01742 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 225185 | KINDRED NURSING & REHABILITATION-COUNTRY GARDENS | 2045 GRAND ARMY HIGHWAY | SWANSEA | MA | 02777 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 225222 | NEWTON AND WELLESLEY ALZHEIMER CENTER | 694 WORCESTER RD | WELLESLEY FMS | MA | 02181 | 11/25/05 to 5/1/13 | | Exhibit 2 |
| 225227 | KINDRED NURSING & REHABILITATION-HILLCREST | 94 SUMMER STREET | FITCHBURG | MA | 01420 | 11/25/05 to 5/31/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 225309 | LEDGEWOOD REHABILITATION & SKILLED NURSING CENTER | 87 HERRICK STREET | BEVERLY | MA | 01915 | 11/25/05 to 12/21/15 | | Exhibit 2 |
| 225370 | KINDRED TRANSITIONAL CARE & REHAB-HAMMERSMITH | 73 CHESTNUT STREET | SAUGUS | MA | 01906 | 11/25/05 to 5/31/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 225445 | KINDRED NURSING AND REHABILITATION-BRAINTREE | 1102 WASHINGTON STREET | BRAINTREE | MA | 02184 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Braintree Nursing, LLC | Exhibit 2 |
| 225453 | KINDRED TRANSITIONAL CARE & REHAB-CRAWFORD | 273 OAK GROVE AVENUE | FALL RIVER | MA | 02723 | 11/25/05 to 6/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |

| Provider # | Kindred Nursing Home Name | Address | City | State | Zip | Applicable Kindred Ownership Dates (During Reviewed Period) | Kindred's Wholly-Owned Designated Corporate Operator | Facility Exhibit Designation |
|---|---|---|---|---|---|---|---|---|
| 225465 | KINDRED NURSING & REHABILITATION-HALLMARK | 1123 ROCKDALE AVENUE | NEW BEDFORD | MA | 02740 | 11/25/05 to 9/8/15 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 225469 | LAUREL RIDGE REHAB AND SKILLED CARE CENTER | 174 FOREST HILLS STREET | BOSTON | MA | 02130 | 11/25/05 to 6/13 | | Exhibit 2 |
| 225486 | PRESENTATION NURSING & REHABILITATION CENTER | 10 BELLAMY STREET | BOSTON | MA | 02135 | 11/25/05 to 6/13 | | Exhibit 2 |
| 225567 | SEACOAST NURSING & REHABILITATION CENTER INC | 292 WASHINGTON STREET | GLOUCESTER | MA | 01930 | 11/25/05 to 12/21/15 | | Exhibit 2 |
| 225587 | KINDRED NURSING AND REHABILITATION-TOWER HILL | ONE MEADOWBROOK WAY | CANTON | MA | 02021 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Tower Hill Nursing, LLC | Exhibit 2 |
| 225642 | KINDRED TRANSITIONAL CARE & REHAB-COUNTRY ESTATES | 1200 SUFFIELD STREET | AGAWAM | MA | 01001 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Country Estates Nursing, LLC | Exhibit 2 |
| 225668 | KINDRED TRANSITIONAL CARE & REHAB-THE MEADOWS | 111 HUNTOON MEMORIAL HIGHWAY | ROCHDALE | MA | 01542 | 3/15/06 to 9/3/13 | Kindred Nursing Centers, East, LLC Meadows Nursing, LLC | Exhibit 2 |
| 225674 | KINDRED TRANSITIONAL CARE & REHABILITATION-AVERY | 100 WEST STREET | NEEDHAM | MA | 02194 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Avery Manor Nursing, LLC | Exhibit 2 |
| 225723 | KINDRED TRANSITIONAL CARE AND REHAB-HIGHLANDER | 1748 HIGHLAND AVENUE | FALL RIVER | MA | 02720 | 3/15/06 to 12/21/15 | Kindred Nursing Centers, East, LLC Highlander Nursing, LLC | Exhibit 2 |
| 225749 | KINDRED NURSING & REHABILITATION-LAUREL LAKE | 620 LAUREL STREET | LEE | MA | 01238 | 3/15/06 to 12/21/15 | Kindred Nursing Centers East, LLC Laurel Lake Health and Rehabilitation, LLC | Exhibit 2 |
| 205062 | BREWER REHAB AND LIVING CENTER | 74 PARKWAY SOUTH | BREWER | ME | 04412 | 11/25/05 to 7/1/13 | | Exhibit 2 |
| 205077 | AUGUSTA REHABILITATION CENTER | 188 EASTERN AVE | AUGUSTA | ME | 04330 | 11/25/05 to 7/1/13 | | Exhibit 2 |
| 205078 | WINSHIP GREEN NURSING CENTER | 51 WINSHIP ST | BATH | ME | 04530 | 11/25/05 to 7/1/13 | | Exhibit 2 |
| 275030 | KINDRED TRANSITIONAL CARE & REHAB - PARK PLACE | 1500 32ND ST S | GREAT FALLS | MT | 59405 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 345049 | KINDRED TRANSITIONAL CARE & REHAB-RALEIGH | 616 WADE AVENUE | RALEIGH | NC | 27605 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 345081 | KINDRED TRANSITIONAL CARE & REHAB-ROSE MANOR | 4230 NORTH ROXBORO ROAD | DURHAM | NC | 27704 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 345159 | KINDRED NURSING & REHABILITATION-LINCOLN | 1410 EAST GASTON ST | LINCOLNTON | NC | 28092 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 345162 | REHABILITATION AND HEALTH CENTER OF GASTONIA | 416 N HIGHLAND ST | GASTONIA | NC | 28052 | 11/25/05 to 5/1/13 | | Exhibit 2 |
| 345359 | KINDRED TRANSITIONAL CARE & REHAB-AHOSKIE | 604 STOKES STREET EAST | AHOSKIE | NC | 27910 | 11/25/05 to 8/5/13 | | Exhibit 2 |
| 345365 | KINSTON HEALTHCARE AND REHABILITATION CENTER | 907 CUNNINGHAM RD | KINSTON | NC | 28501 | 11/25/05 to 5/1/13 | | Exhibit 2 |
| 285049 | HOMESTEAD NURSING & REHABILITATION CENTER | 4735 SOUTH 54TH STREET | LINCOLN | NE | 68516 | 11/25/05 to 2010 | Kindred Healthcare Operating, Inc. Homestead Health and Rehabilitation Center, LLC | Exhibit 2 |
| 305005 | KINDRED TRANSITIONAL CARE & REHABILITATION-GREENBRIAR | 55 HARRIS ROAD | NASHUA | NH | 03062 | 11/25/05 to 12/21/15 | | Exhibit 2 |
| 295045 | TORREY PINES CARE CENTER | 1701 S. TORREY PINES DRIVE | LAS VEGAS | NV | 89146 | 11/25/05 to 12/19/12 | | Exhibit 2 |
| 365673 | KINDRED TRANSITIONAL CARE AND REHABILITATION - FRANKLIN WOODS | 2770 CLIME ROAD | COLUMBUS | OH | 43223 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 365713 | KINDRED TRANSITIONAL CARE & REHAB-LAKEMED | 70 NORMANDY DR | PAINESVILLE | OH | 44077 | 11/25/05 to 12/21/15 | PersonaCare of Ohio, Inc. | Exhibit 2 |
| 365770 | KINDRED NURSING & REHABILITATION-CAMBRIDGE | 1471 WILLS CREEK VALLEY DRIVE | CAMBRIDGE | OH | 43725 | 11/25/05 to 4/30/14 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 365880 | COSHOCTON HEALTH & REHABILITATION CENTER | 100 SOUTH WHITEWOMAN STREET | COSHOCTON | OH | 43812 | 11/25/05 to 5/1/13 | | Exhibit 2 |
| 385189 | KINDRED NURSING AND REHABILITATION - SUNNYSIDE | 4515 SUNNYSIDE ROAD SE | SALEM | OR | 97302 | 11/25/05 to 5/31/14 | | Exhibit 2 |
| 445172 | KINDRED NURSING AND REHABILITATION-SMITH COUNTY | 112 HEALTH CARE DR | CARTHAGE | TN | 37030 | 11/25/05 to 12/21/15 | Kindred Nursing Centers, LP | Exhibit 2 |
| 465009 | KINDRED NURSING & REHABILITATION - WASATCH CARE | 3430 HARRISON BOULEVARD | OGDEN | UT | 84403 | 11/25/05 to 6/30/14 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 495068 | HARBOUR POINTE M & R CENTER | 1005 HAMPTON BLVD | NORFOLK | VA | 23507 | 11/25/05 to 5/1/13 | | Exhibit 2 |
| 495086 | KINDRED TCC AND REHABILITATION-BAY POINTE | 1148 FIRST COLONIAL RD | VIRGINIA BEACH | VA | 23454 | 11/25/05 to 12/21/15 | Kindred Nursing Centers East, LLC | Exhibit 2 |
| 505204 | QUEEN ANNE HEALTHCARE | 2717 DEXTER AVENUE NORTH | SEATTLE | WA | 98109 | 11/25/05 to 4/9/13 | | Exhibit 2 |
| 505206 | KINDRED TRANSITIONAL CARE & REHAB CTR VANCOUVER | 400 EAST 33RD STREET | VANCOUVER | WA | 98663 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |

| Provider # | Kindred Nursing Home Name | Address | City | State | Zip | Applicable Kindred Ownership Dates (During Reviewed Period) | Kindred's Wholly-Owned Designated Corporate Operator | Facility Exhibit Designation |
|---|---|---|---|---|---|---|---|---|
| 505214 | KINDRED NURSING AND REHABILITATION - ARDEN | 16357 AURORA AVENUE NORTH | SEATTLE | WA | 98133 | 11/25/05 to 12/21/15 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 505223 | BELLINGHAM HEALTH CARE AND REHABILITATION SERVICE | 1200 BIRCHWOOD AVENUE | BELLINGHAM | WA | 98225 | 11/25/05 to 4/9/13 | | Exhibit 2 |
| 505294 | KINDRED TRANSITIONAL CARE & REHAB CTR - BEACON HILL | 128 BEACON HILL DRIVE | LONGVIEW | WA | 98632 | 11/25/05 to 6/30/14 | Kindred Nursing Centers West, LLC | Exhibit 2 |
| 525330 | KINDRED NURSING AND REHAB-MIDDLETON VILLAGE | 6201 ELMWOOD AVE | MIDDLETON | WI | 53562 | 11/25/05 to 6/30/14 | PersonaCare of Wisconsin, Inc. | Exhibit 2 |
| 525389 | KINDRED NURSING AND REHABILITATION-NORTH RIDGE | 1445 N 7TH ST | MANITOWOC | WI | 54220 | 11/25/05 to 5/31/14 | Kindred Nursing Centers, LP | Exhibit 2 |
| 525407 | FOX RIVER NURSING AND REHAB CENTER (COLONY OAKS CARE CENTER) | 601 N BRIARCLIFF DR | APPLETON | WI | 54915 | 11/25/05 to 2/1/13 | KINDRED NURSING CENTERS LIMITED PARTNERSHIP | Exhibit 2 |
| 525410 | KINDRED TRANSITIONAL CARE AND REHAB-EASTVIEW | 729 PARK ST | ANTIGO | WI | 54409 | 11/25/05 to 5/31/14 | Kindred Nursing Centers, LP | Exhibit 2 |
| 525481 | VALLHAVEN CARE CENTER | 125 BYRD AVE | NEENAH | WI | 54956 | 11/25/05 to 2/1/13 | | Exhibit 2 |
| 535037 | SAGE VIEW CARE CENTER | 1325 SAGE STREET | ROCK SPRINGS | WY | 82901 | 11/25/05 to 1/31/13 | | Exhibit 2 |