## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF GEORGIA, STATE OF INDIANA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NORTH CAROLINA, STATE OF TENNESSEE, STATE OF WASHINGTON, STATE OF WISCONSIN, COMMONWEALTH OF MASSACHUSETTS, and COMMONWEALTH OF VIRGINIA *ex rel.* TIMOTHY SIRLS,<br><br>                    Plaintiff-Relator,<br><br>          v.<br><br>KINDRED HEALTHCARE, INC.; KINDRED HEALTHCARE OPERATING, INC.; KINDRED HEALTHCARE SERVICES, INC.; KINDRED NURSING CENTERS EAST, LLC; KINDRED NURSING CENTERS WEST, LLC; KINDRED NURSING CENTERS SOUTH, LLC; AND KINDRED NURSING CENTERS NORTH, LLC,<br><br>                    Defendants. | Civil Action No.: 2-16-cv-00683-JD<br><br>Judge:    Honorable Jan E. Dubois<br>Dept.     12B |

## DEFENDANTS' OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................... ii

I. INTRODUCTION .......................................................................................................1

II. ARGUMENT................................................................................................................3

    A. Relator Fails to Articulate a Valid Ground for his Motion for Reconsideration or Amendment of His Complaint. ........................................3

        1. Standard for Motion for Reconsideration................................................3

        2. Standard for Further Amendment of a Complaint ..............................5

        3. The Importance of the Public Disclosure Bar Has Been Clear to Relator Since the Filing of the Complaint .........................................7

        4. Relator Cannot Avoid the Consequences of His Strategic Choice To Withhold the Facts that He Now Seeks to Add to His Complaint ........................................................................................11

    B. Further Amendment is Futile Because the Facts that Relator Strategically Withheld from His Prior Complaints Would Not Have Saved Those Complaints from the Public Disclosure Bar...........................14

III. CONCLUSION ........................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Fin. Guar. v. Advest, Inc.*,
   512 F.3d 46 (1st Cir. 2008)......................................................................................6

*In re Adams Golf, Inc. Sec. Litig.*,
   381 F.3d 267 (3d Cir.2004) ......................................................................................6

*Arthur v. Maersk, Inc.*,
   434 F.3d 196 (3d Cir.2006) ......................................................................................6

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*,
   473 F.3d 506 (3rd Cir. 2007)...................................................................................20

*Conway v. A.I. duPont Hosp. for Children*,
   No. 04-4862, 2009 WL 1492178 (E.D. Pa. May 26, 2009)......................................2

*Feliciano–Hernández v. Pereira–Castillo*,
   663 F.3d 527 (1st Cir. 2011)....................................................................................6

*Jarzyna v. Home Props., L.P.*,
   185 F. Supp. 3d 612 (E.D. Pa. 2016) ....................................................................3, 4

*Kamatta v. Burwell*,
   No. WDQ-14-3684, 2016 WL 160653 (D. Md. Jan. 13, 2016) ...............................5

*Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999) .....................................................................................3

*Mullin v. Balicki*,
   875 F.3d 140 (3d Cir. 2017) ..................................................................................5, 6

*Palladino v. Governor of Pa.*,
   589 F. App'x 61 (3d Cir. 2014).................................................................................4

*PBI Performance Prods., Inc. v. NorFab Corp.*,
   514 F. Supp. 2d 732 (E.D. Pa. 2007) ....................................................................3, 4

*Terese F. v. Saul*,
   396 F. Supp. 3d 793 (N.D. Ill. 2019)........................................................................4

*Hagerty ex rel. United States v. Cyberonics, Inc.*,
   844 F.3d 26 (1st Cir. 2016).....................................................................................5, 6

*Wilson v. Wolf,*
    No. 2:20-cv-04560, 2021 WL 492577 (E.D. Pa. Feb. 10, 2021) ........................................3, 4

*Zhang v. Royal Caribbean Cruises, Ltd.,*
    No. 19-20773-Civ-Scola, 2020 WL 1472302 (S.D. Fla. Mar. 26, 2020) ...........................13

*United States ex rel. Zizic v. Q2Administrators, LLC,*
    728 F.3d 228 (3rd Cir. 2013)............................................................................................3, 20

*Zuno v. Wal-Mart Stores, Inc.,*
    No. 06-2392, 2009 WL 3837198 (E.D. Pa. Nov. 6, 2009) .......................................................4

**Other Authorities**

80 Fed. Reg. 42168 (July 16, 2015) ............................................................................................18

83 Fed. Reg. 39162 (Aug. 8, 2018)..............................................................................................18

## I.   __INTRODUCTION__

After the Court dismissed his claims based on the theory of express/implied false certification of compliance with staffing laws and regulations because he was not an original source, Relator asks that decision be reconsidered so that he can have a fourth try at pleading his case. Yet the grounds for an appropriate motion for reconsideration are narrow and plainly absent here.

Distilled, Relator claims that he is entitled to a fourth bite at the apple because he did not understand the Court's Order on the motion to dismiss the FAC. But he does not admit that. Instead, Relator *blames this Court* for his decision "not [to] focus on the public disclosure bar in crafting his Second Amended Complaint ('SAC')," by falsely claiming the Court had "rejected" Kindred's argument that the public disclosure bar precluded Relator's understaffing claims. (Memo at 1, 4). As the Court knows, the truth is the Court *expressly declined* to rule on that issue in the context of the understaffing claim. (Memorandum Opinion on Defendants' Motion to Dismiss First Amended Complaint ("FAC Opinion," ECF No. 60),  at 35 n.19; Memorandum Opinion on Defendants' Motion to Dismiss Second Amended Complaint ("SAC Opinion," ECF No. 85), at 18, n. 10.) And while the Court did not rule on the issue (because the understaffing claim was dismissed on an alternate ground), the Court still gave warning to the Relator that "the sources cited by defendants broadly disclose staffing issues and defendants' failure to staff based on resident acuity." (FAC Opinion at  35; SAC Opinion at 18, n.10.) Far from lulling the Relator into a deserved sense of

complacency, as he contends, the Court's decision dismissing the FAC highlighted the Relator's risk on this very issue. (FAC Opinion at 35.) [1]

Given this, what we are left with is Relator seeking a do-over because he elected to withhold information from his earlier complaints. While that may be grounds for regret, it's not a permissible ground for a motion to dismiss. *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *7 (E.D. Pa. May 26, 2009) ("It is not the job of courts deciding motions for reconsideration to rescue the parties from their strategic litigation choices.").

And even if we put aside whether this motion for reconsideration is appropriate, the facts Relator now seeks to add cannot transform him into an "original source." All he proposes to add are allegations that he is relying on a proposed expert's alternative staffing model to make his claims. But he is neither the original source of the model (which has been proposed to and rejected by CMS) nor the data on which it relies

---

[1] Relator's misstatement on this point is all the more extraordinary because the Court plainly spelled out how its ruling was consistent with its prior decision in its opinion on the motion to dismiss the SAC:

> In the [FAC Opinion], the Court considered the public disclosures defendants presented. Because the Court held that relator failed to allege materiality of staffing requirements, the Court did not address whether the public disclosure bar applies to this theory of fraud. However, after reviewing defendant's sources in its analysis of the effect of the public disclosure bar on relator's other claims at issue in defendants' [MTD FAC], the Court observed "the sources cited by defendants broadly disclose staffing issues and defendants' failure to staff based on resident acuity."(SAC Opinion at 18, n. 10.)

(publicly available staffing data). Thus, the bar would still apply, making his proposed amendment futile. *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 241 (3rd Cir. 2013) (explaining that the Third Circuit has "repeatedly rejected the argument that a relator's knowledge is independent when it is gained through the application of expertise to information publicly disclosed under § 3730(e)(4)(A)").

Thus, Relator's Motion for Reconsideration and alternative Motion to Amend should be denied.

## II.    ARGUMENT

### A.    Relator Fails to Articulate a Valid Ground for his Motion for Reconsideration or Amendment of His Complaint.

#### 1.    Standard for Motion for Reconsideration

The "purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A court may reconsider a prior ruling if the moving party shows (1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Wilson v. Wolf*, No. 2:20-cv-04560, 2021 WL 492577, *1 (E.D. Pa. Feb. 10, 2021).

"Because of the courts' interest in the finality of judgments, motions for reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and decided by the Court." *PBI Performance Prods., Inc. v. NorFab Corp.*, 514 F. Supp. 2d 732, 743-44 (E.D. Pa. 2007) (quotation marks and citation omitted); *see also Jarzyna v. Home Props., L.P.*, 185 F. Supp.

3d 612, 622 (E.D. Pa. 2016) (motions for reconsideration "should not be grounded on a request that a court rethink a decision already made"). "[M]otions for reconsideration may not be used to give a litigant a 'second bite of the apple,'" *id.* (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)), or "correct mistakes it made in its previous" approach. *PBI Performance Prods.*, 514 F. Supp. 2d at 744.

"Thus, a motion for reconsideration may address 'only factual and legal matters that the Court may have overlooked' and may not 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" *Jarzyna*, 185 F. Supp. 3d at 622 (citations omitted). Relator "cannot use the present motion to raise new theories with the benefit of the hindsight he gets from seeing the Court's analysis." *Wilson*, 2021 WL 492577, *2; *PBI Performance Prods.*, 514 F. Supp. 2d at 744 ("A motion for reconsideration should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided."); *Palladino v. Governor of Pa.*, 589 F. App'x 61, 64 (3d Cir. 2014) (noting that motions to reconsider "may not be used to relitigate old matters").

A motion for reconsideration is "not a mechanism that allows a party to revisit strategic decisions that prove to be improvident, to make arguments that could and should have been made in prior briefing, to express mere disagreement with a decision of the court, or to reprise or 'rehash' arguments that were rejected." *Terese F. v. Saul*, 396 F. Supp. 3d 793, 794 (N.D. Ill. 2019); *see also Zuno v. Wal-Mart Stores, Inc.*, No. 06-2392, 2009 WL 3837198, at *3 (E.D. Pa. Nov. 6, 2009) ("It was Plaintiff's strategic decision not to make Mr. Estin's report a part of the record prior to my decision concerning

4

summary judgment in this matter. As such, it cannot be submitted as 'new' evidence in support of this motion for reconsideration.")

### 2. **Standard for Further Amendment of a Complaint**

The same concerns for finality and avoiding gamesmanship that apply to motions for reconsideration apply with equal force to strategic decisions to stand on one's complaint in the face of a motion to dismiss, rather than seek leave to amend *before* the court rules. *Kamatta v. Burwell*, No. WDQ-14-3684, 2016 WL 160653, at *4-5 (D. Md. Jan. 13, 2016) ("Kamatta *chose* to move forward with her complaint as it stood. She made a tactical decision. The Court, however, ruled in favor of Burwell and dismissed Kamatta's claims with prejudice. Now, Kamatta seeks to alter her tactical mistake. This, however, should not provide a basis for reconsideration.... The focus of Kamatta's argument appears to be that she could not amend her complaint to correct deficiencies until the Court informed her what the deficiencies were. This, however, is not the purpose of a motion to dismiss.").

"Though courts should freely give leave when justice so requires, amendments may be denied for several reasons, including undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment." *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (citations and quotation marks omitted). "[U]ndue delay, on its own, may be enough to justify denying a motion for leave to amend." *Id.* Undue delay is "a delay that is protracted and unjustified." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). The focus of this inquiry is "on the movant's reasons for not amending sooner." *Id.* The Third Circuit has

"refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment." *Id*. The Third Circuit typically rejects a wait-and-see approach to pleading. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir.2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir.2004) ("Plaintiffs relied at their peril on the possibility of adding to their complaint...."). The length of a relator's delay in seeking to amend is not measured from the date of dismissal because such an approach would "place[] responsibility for any delay accruing before the dismissal squarely on the district court," and "nothing prevent[s] [a relator] from moving for leave to plead any new information once he [becomes] aware of it." *Hagerty* 844 F.3d at 34. In *Hagerty*, undue delay prevented amendment where the relator sought leave to amend fourteen months after defendant's motion to dismiss. *Id.* at 35; *see Feliciano–Hernández v. Pereira–Castillo*, 663 F.3d 527, 538 (1st Cir. 2011) (upholding district court's undue delay determination where motion to amend was filed "nearly a year after the motion to dismiss was filed"); *ACA Fin. Guar. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("Plaintiffs may not, having the needed information, deliberately wait in the wings ... with another amendment to a complaint should the court hold the first amended complaint was insufficient. Such an approach would impose unnecessary costs and inefficiencies on both the courts and party opponents.").

3.   **The Importance of the Public Disclosure Bar Has Been Clear to Relator Since the Filing of the Complaint**

From the outset, Relator has known the possibility that his claims would be precluded by the public disclosure bar, and he tried to plead around it. In his original complaint filed five years ago, he alleged:

> There has been no public disclosure of the allegations herein. To the extent that there has been a public disclosure unknown to the John Doe Relators, they are the "original source" under 31 U.S.C. § 3730(e)(4) and similar state laws. John Doe Relators have direct and independent knowledge of the information on which the allegations are based.

(Compl. ¶ 14.) Relator repeated this allegation in his First Amended Complaint filed on June 28, 2019. ("FAC," ECF No. 18, ¶ 14.)

On August 22, 2019, Kindred moved to dismiss Relator's understaffing claims based in part on the public disclosure bar, detailing the particular public disclosures. (Defendants' Motion to Dismiss First Amended Complaint ("MTD FAC"), ECF No. 48, at 25-31.) Kindred further explained that Relator is not an "original source." (*Id.* at 31-33.)

On June 29, 2020, in its order on the motion to dismiss the FAC, the Court declined to dismiss one subset of Relator's claims based on the public disclosure bar—those based on allegations "that defendants' facilities submitted false MDS reports and claims for payment based on inflated Resource Utilization Group billing codes." (FAC Opinion at 32.) The Court ruled that these particular claims survived because the cited public disclosures "disclose neither the specific allegations that defendants' facilities

7

submitted false MDS reports and falsely inflated Resource Utilization Group billing codes nor the essential elements of that alleged fraud." (*Id.* at 35.)

But those MDS falsity claims are *not* at issue in this Motion for Reconsideration. As to the understaffing claims that *are* at issue here, the Court noted that it "need not consider whether the cited public disclosures bar plaintiff's claims under a theory of false certifications of compliance with federal staffing requirements, because the Court has concluded that relator has not sufficiently alleged such claims, and those claims have been dismissed." (FAC Opinion at 35, n.19.) Still, the Court warned Relator that "the sources cited by defendants broadly disclose staffing issues and defendants' failure to staff based on resident acuity." (*Id.* at 35.)

On July 14, 2020—with the benefit of Kindred's MTD FAC and the FAC Opinion—Relator filed his SAC. (ECF No. 62.) Relator could have taken this opportunity to address the public disclosure problems identified by Kindred and the Court. Yet despite the glaring public disclosure problems with his understaffing claims, Relator—by his own admission—made the strategic choice to "not focus on the public disclosure bar in crafting his [SAC]." (Memo at 1, 4.)

On August 25, 2020, Kindred again moved to dismiss the understaffing claims in the SAC, citing precisely the same public disclosures. (MTD SAC, at 17-21; Memo at 2 (noting that Kindred's MTD SAC "includ[ed] the same argument … that Relator's claims were subject to the public disclosure bar").) Kindred "incorporated by reference" "Section VII" of its MTD FAC. (MTD SAC at 17.) Kindred further pointed to the FAC Opinion's statement that "'the sources cited by defendants broadly disclose staffing

issues and defendants' failure to staff based on resident acuity.'" (MTD SAC at 18 (quoting FAC Opinion at 35).) Kindred also showed that Relator is not an original source. (MTD SAC at 19-21.)

Relator could have sought leave to amend following receipt of the MTD SAC. He chose not to do so, instead opposing the MTD SAC. (Relator's Memorandum of Law in Opposition to MTD SAC ("Opp. to MTD SAC"), ECF No. 68.) In his Opposition to the MTD SAC, Relator falsely claimed—as he does now—that the Court "resolved in relator's favor" the "applicability of the public disclosure bar." (*Id.* at 3, 21, 25; Memo at 2 (falsely claiming that the FAC Opinion "specifically noted that Relator's reliance on federal administrative investigations and reports, civil hearings, action materials, and news reports did not trigger the public disclosure bar of the FCA"); *id.* at 4 (falsely claiming the FAC Opinion "explicitly rejected Kindred's [public disclosure] argument").) Relator also falsely claimed that "the Court ha[d] already recognized [that] Relator is clearly an original source [whose] claims are not subject to the public disclosure bar." (Opp. to MTD SAC at 25; Memo at 5 (claiming that the FAC Opinion found that Relator "was an original source.")

On October 27, 2020, Kindred filed its Reply in Support of its MTD SAC. ("MTD SAC Reply," ECF No. 72.) There, Kindred pointedly stated that Relator had mischaracterized the Court's FAC Opinion:

> Relator claims that "the Court previously rejected [the public disclosure bar argument] in its Order" and that "[t]he Court previously held that Relator's claims are not precluded by the public disclosure bar." (Opp. at 21, 25). **That is false.** *See* Order at 35, n. 19 ("The Court need not consider

whether the cited public disclosures bar plaintiff's claims under a theory
of false certifications of compliance with federal staffing requirements,
because the Court has concluded that relator has not sufficiently alleged
such claims, and those claims have been dismissed.").

 (*Id.* at 10) (emphasis added.) Kindred further explained why Relator's understaffing

claims—as distinguished from his MDS falsity claims—could not survive the public

disclosure bar. (*Id.* at 10-15.)

Once again, upon receipt of Kindred's MTD SAC Reply, Relator had a strategic

decision to make—promptly seek leave to amend to try to cure his public disclosure

problem or stand on his SAC. Relator chose to roll the dice with his existing SAC,

thereby withholding from Kindred and the Court information that was within his

possession and that he now claims is the solution to his public disclosure problem.

Whatever benefit Relator hoped to gain by keeping this information in reserve,

his gamble did not pay off. On February 5, 2021, the Court dismissed Relator's

understaffing claims as barred by the public disclosure bar. (SAC Opinion at 16-24.) The

Court noted—contrary to Relator's argument—that while its FAC Opinion "considered

the public disclosures defendants presented," it "did not address whether the public

disclosure bar applies to *this* theory of fraud" (certification of compliance with staffing

regulations), though it had "observed 'the sources cited by defendants broadly disclose

staffing issues and defendants' failure to staff based on resident acuity.'" (SAC Opinion

at 18, n.10 (quoting FAC Opinion at 35) (emphasis added.) The Court scrutinized the

allegations of the SAC and the arguments of the parties in the MTD SAC, Relator's

Opposition to the MTD SAC, and the MTD SAC Reply. Consistent with its prior

observations in its FAC Opinion, the Court "conclude[d] the public disclosure bar applies to relator's claim under the theory of express/implied legal falsity for certification of compliance with staffing regulations." (*Id.* at 21 (pre-March 23, 2010 bar), 23-24 (post March 23, 2010 bar).) The Court also concluded that Relator did "not overcome the public disclosure bar by demonstrating that he is an original source of the allegations in the SAC." (*Id.* at 21 (pre-March 23, 2010 bar), 24 (post-March 23, 2010 bar).) The Court also held that "[a]ll of the above dismissals of relator's claims are with prejudice on the ground that, because relator has filed two amended complaints, the Court concludes that further amendment would be futile." (*Id.* at 32.)

4. **Relator Cannot Avoid the Consequences of His Strategic Choice To Withhold the Facts that He Now Seeks to Add to His Complaint**

His gamble failing to achieve its desired result, Relator now seeks a do-over. Relator's request rests on a false foundational premise—that his decision not to plead all available facts in support of his claim to be an "original source" is justified because he was somehow misled by the Court's FAC Opinion to believe that public disclosure was not an issue and that he was an original source. Relator maintains that "[a]s the Court declined to dismiss Relator's claims in the FAC on public disclosure grounds, and furthermore explicitly rejected Kindred's argument in its FAC Order, Relator reasonably believed that he had cleared the public disclosure hurdle." (Memo at 4-5.) He argues that "[b]ecause the Court's public disclosure concerns were set forth in detail for the first time in the Order, justice and fairness require that Relator be allowed to amend the SAC." (*Id.*) This is simply not true.

11

Relator's own Memorandum makes clear that he could have included his original source allegations in his SAC, but he chose not to. (Memo. at 5 ("Had Relator been aware that the Court had public disclosure concerns, he would have certainly used the opportunity to amend his complaint to add additional details bolstering the Court's previous finding that he cleared the public disclosure bar and was an original source."). This foundational premise is not only false, but Kindred advised Relator that he was misreading the FAC Opinion months before the Opinion that Relator is asking the Court to reconsider. (MTD SAC Reply at 10, 12.)

The potential application of the public disclosure bar was known to Relator more than five years ago, and Kindred's public disclosure arguments have been known to Relator since August 2019. Further, the Court's view that "the sources cited by defendants broadly disclose staffing issues and defendants' failure to staff based on resident acuity" (FAC Opinion at 35) has been known to Relator since June 2020. With this information, Relator could have included in his SAC the information that he now seeks to add in a Third Amended Complaint if he believed it would make him an original source. (Memo at 5.) He did not. He apparently believed that the value of disclosing the source of his understaffing claims was outweighed by other considerations. The SAC Opinion and Order have changed the Relator's cost-benefit analysis.[2] Only in a desperate attempt to resuscitate his dismissed claims is Relator now willing to share facts with Kindred and the Court that he could have shared years ago.

---

[2] A discussion of the allegations that Relator now seeks to add to a Third Amended Complaint is provided below in the discussion of the futility of amendment.

A recent decision from the Southern District of Florida reflects a typical approach to the type of gamesmanship that Relator is attempting:

> The Defendants' motions to dismiss then put Zhang on notice of his pleading's additional shortcomings. At that point Zhang had a choice: stand on his pleading and oppose the motions to dismiss or request leave to amend in order to address his pleading's flaws. As a tactical decision, Zhang chose to oppose the motions and lost.… Here, Zhang reviewed the Defendants' motions to dismiss, vigorously opposed them and then sat back and waited to see if the Court would let his pleading fly. And then, when the Court granted the motions to dismiss, Zhang **suddenly came up with a litany of new facts** that he claims fix his pleading's deficiencies. Zhang had every opportunity to fix the deficiencies the Defendants identified prior to the Court's careful and thorough review. **He should have taken his best shot from the get go; he should not have waited for the Defendants and the Court to have worked through his pleading before bothering to inform all involved that he had a much better pleading in his back pocket in case things went badly for him**. At best this was a poor strategic decision; **at worst this was an attempt at sandbagging that backfired**. The Court is not persuaded by Zhang's after-the-fact attempt to recast this tactical decision as a mistake, inadvertence, or excusable neglect, warranting reconsideration.

*Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-Civ-Scola, 2020 WL 1472302, at *2 (S.D. Fla. Mar. 26, 2020) (emphases added). Here, too, the Relator should not be rewarded for his tactical decision to withhold information from Kindred and the Court that he now claims is indispensable to his public disclosure problem. If Relator believes this information would have changed the public disclosure analysis, he "should have taken his best shot form the get go" rather than withholding this information. *Id.*

**B.**   **Further Amendment is Futile Because the Facts that Relator Strategically Withheld from His Prior Complaints Would Not Have Saved Those Complaints from the Public Disclosure Bar.**

Even if the Court were inclined to indulge Relator's inexcusably delayed allegations, they do not make Relator an original source and they would not save his understaffing claims. Like many last-ditch, desperation shots, Relator's attempt simply misses the mark. Rather than demonstrate that Relator is an original source, the information that Relator seeks to add only reinforces application of the public disclosure bar. It discloses that the case that Relator originally tried to sell to this Court as based on his own firsthand experience working at one of Kindred's nursing facilities is really based on something else—applying an academic staffing model to publicly available data obtained through a FOIA request. (Memo at 9); *see also* (Memo at 7 ("Relator, through his attorneys and experts, obtained … MDS data from CMS."); *id.* at 10 ("Relator's expert obtained, tracked and analyzed" publicly available "staffing data … from CMS"); *id.*at 7-14 (describing the calculations that Relator's experts conducted based entirely on publicly available MDS and PBJ staffing data).[3] Further, as discussed below, that staffing model is well known to the Centers for Medicare and Medicaid ("CMS"). It is little wonder Relator withheld this information until after his

---

[3] In other words, the alleged scheme was not "revealed to him" during his time at Heritage Manor and then confirmed through further research, as he claimed in his response in opposition to Kindred's Motion for Phased Discovery. (Pl.'s Opp. to Defs.' Mot. for Phased Discovery [Dkt. No. 84] at 15). Rather, as explained further below, his case is based on a payment model that was developed long before Relator ever went to work for Kindred.

understaffing claims were dismissed, at a point when he had little to lose by raising it in the present Motion.

Though he did not supply any facts necessary to his experts' calculations (facts that were instead obtained from CMS), Relator claims original source status because his experts used this data in ways that purportedly had not occurred to CMS to make the case that Kindred's facilities were understaffed. (*Id.* at 7-20.) Relator repeatedly asserts that without his experts' work, "the Government would not have known" the degree to which these models showed that Kindred was understaffing its facilities. (*Id.* at 9-10.) Relator further asserts that CMS—the agency charged with formulating Medicare payment policy—"never applied the methodology necessary to perform the kind of analysis that would make Kindred's staffing data meaningful." (*Id.* at 10-11.) In short, Relator declares himself an "original source" because his experts (or his attorneys' experts) obtained data from CMS, applied that data in novel ways that CMS had never done (and had never told regulated providers was material to payment), to come up with a brand new payment rule that providers (and CMS, for that matter) could not have known about because it is the proprietary work of their experts and has never been publicly disclosed.

That Relator hired experts to analyze publicly available data in a way that CMS had never done does not make him an "original source." The Court previously noted that "Relator's only argument that the public disclosure bar does not apply is that 'no person other than Relator has alleged, accused, or even suggested that Defendant defrauded the Government through its staffing policy.'" (SAC Opinion at 20 (quoting

Opp. to MTD SAC at 22).) "However, novelty of theory is insufficient to overcome the public disclosure bar when the fraud's essential elements have already been disclosed." (*Id.*) Similarly, novel payment models do not avoid the public disclosure bar or make Relator an "original source." The Court previously held that Relator is not an "original source" under the pre-March 23, 2010 public disclosure bar because "[h]e does not explain how he learned [any 'direct and independent' knowledge], through either his involvement in the alleged fraud or through his own investigation." (SAC Opinion at 21 citing *United States ex rel. Judd v. Quest Diagnostics, Inc.*, 638 Fed. App'x 162, 168 (3rd Cir. 2015) (holding that relator's "bare assertion" he had firsthand knowledge of the defendants' fraudulent scheme was not sufficient to overcome the public disclosure bar because "[t]o establish original source status knowledge, a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint") (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)).) As to the post-March 23, 2010 bar, the Court held that "relator fails to establish that he is an independent source of the allegations contained in the SAC because he does not state how he learned the facts contained in the SAC." (SAC Opinion at 24.)  And even if Relator could have cleared this hurdle, the public disclosure bar would have required him to "materially add to the allegations by 'contribut[ing] information – distinct from what was publicly disclosed – that adds in a significant way to the essential factual background: the who, what, when, where and

16

how of the events at issue.'" (SAC Opinion at 22 (quoting *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294, 306 (3d Cir. 2016)).)

Relator's experts' supposedly novel models do not make Relator an "original source." The only facts underlying these models—MDS and staffing data—are publicly available. In fact, they came from CMS—the agency that determines Medicare payment policy. Relator has not given the Government anything it did not already have. If the Government had wanted to engage experts to analyze MDS and staffing data in the way that Relator's experts did, it certainly could have done so.

Relator highlights his experts' "rel[iance] on the work of Relator's expert John F. Schnelle, Ph. D., Vanderbilt University, Director of Vanderbilt Center for Quality Aging and Professor of Medicine, Vanderbilt School of Medicine." (Memo at 7.) Dr. Schnelle is no stranger to the Government—which has, at various times, itself engaged Dr. Schnelle for nursing facility staffing analyses and, in later times, rejected his (and similar) staffing models.

As far back as 2001, the Health Care Finance Administration (as CMS was then named) retained Dr. Schnelle as an expert in administrative proceedings alleging insufficient staffing at a nursing facility. *See Carehouse Convalescent Hosp. v. Health Care Financing Admin.,* HHS Departmental Appeals Board, Civil Remedies Division Docket No. C-00-006 Decision No. CR729, 2001 WL 37090841, at 13 (Jan. 16, 2001). Notably, the Administrative Law Judge rejected Dr. Schnelle's conclusions, holding "that the analysis that Dr. Schnelle employed to conclude that Petitioner's staffing was inadequate and was flawed in significant respects." *Id.*

More recently, on July 16, 2015 (just seven months before Relator filed this action), CMS issued a Federal Register notice involving a "proposed rule [that] would revise the requirements that Long-Term Care facilities must meet to participate in the Medicare and Medicaid programs." (80 Fed. Reg. 42168 (July 16, 2015).) In it, CMS considered and rejected a proposal to set a minimum number of staffing hours per resident day. CMS noted that a "study by Schnelle and colleagues (2004) also supports a threshold level of 4.1 total nursing hours per resident day to ensure that the processes of nursing care are adequate." (80 Fed. Reg. at 42200.) CMS declined to use Dr. Schnelle's data and conclusions in establishing nursing facility staffing standards.

CMS again declined to use Dr. Schnelle's model in 2016, when it changed the Medicare reimbursement methodology for skilled nursing facilities (from the RUG reimbursement system to a methodology known as the Patient-Driven Payment Model or "PDPM"). CMS noted that some commenters on the proposed PDPM Rule "recommended replacing STRIVE [a study estimating resident needs] with the Schnelle et al. 2016 simulation model to estimate nursing resource requirements." (83 Fed. Reg. 39162, 39218 (Aug. 8, 2018).) CMS rejected this proposal, stating: "In response to the alternative data source proposed by commenters, the Schnelle et al. simulation model estimates resource use for nurse aides only; therefore, it is not a comprehensive or appropriate measure of nursing utilization." 83 Fed. Reg. at 39219.

In short, Dr. Schnelle's mathematical model purporting to show low staffing in nursing homes is no secret. An article published by the Association of Trial Lawyers of America notes:

18

> John F. Schnelle, Ph.D., of the Borun Center for Gerontological Research in
> Los Angeles, … examined the amount of CNA time required to complete
> five basic care processes, including toileting, repositioning, and assistance
> with eating. In his testimony before the Senate Committee, he indicated
> that the staffing levels suggested by the report fell short by nearly an hour
> of CNA time per patient per day…. He also testified that 92 percent of our
> nursing homes fall below 2.9 hours of CNA care per patient day.

*A Call to Action: Nursing Home Litigation*, Winter 2001, ATLA-CLE 377 (2001).

Given that Dr. Schnelle maintains that 92% of the nursing facilities in the United

States are understaffed, it is no surprise that plaintiffs' lawyers would embrace his

model. It is not terribly surprising that CMS, on the other hand, would decline to

embrace Dr. Schnelle's model in setting staffing requirements and reimbursement rates

for nursing facilities.

The allegations that Relator would add to a Third Amended Complaint would

simply seek to add more detail to support Relator's novel theory; it does not and cannot

change the fact that "the fraud's essential elements have already been publicly

disclosed." (*Id.* at 20, 23.) Nor would they make him an original source. Moreover,

Relator's retention of an expert whose work is well-known to the Government—which

has at various times accepted and rejected the types of calculations advocated by

Relator—does not make Relator an original source.

Relator claims that he is an original source because his experts took the publicly

available MDS and staffing data and used proprietary models to calculate staffing levels

that Relator labels fraudulent. Yet the Third Circuit has "repeatedly rejected the

argument that a relator's knowledge is independent when it is gained through the

application of expertise to information publicly disclosed under § 3730(e)(4)(A)." *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 241 (3rd Cir. 2013).

The "original source" inquiry should "fulfill the FCA's twin goals of rejecting suits which the government is capable of pursing itself, while promoting those which the government is not equipped to bring on its own." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 522 (3rd Cir. 2007) (citation and quotation marks omitted). "[C]ourts must be mindful of suits based only on secondhand information, speculation, background information or collateral research." *Id.* at 523 (citation and quotation marks omitted). In *Atkinson*, the Third Circuit held that the relator was not an original source because "[a]ny member of the public could have gone to a county recording office to see if Penn Ship or Fidelity had recorded the interests as required by the Trust Indenture." *Id.* Similarly, here, any member of the public (or the Government itself) could have taken the public MDS and staffing data to Dr. Schnelle—who has testified that 92% of nursing homes are understaffed—and hired him to use his publicized models just as Relator (or Relator's counsel) did. The public data, and Dr. Schnelle's ability to turn that public data into allegations of widespread understaffing, is well documented.

III.    **CONCLUSION**

Relator does not even try to argue one of the narrow, permissible grounds for a motion for reconsideration. The controlling law has not changed. No new evidence has become available since the Court's Order. And there is no clear error of law or fact or a manifest injustice that must be rectified. Thus, the motion for reconsideration should be

denied. But even if the Relator had not chosen the wrong vehicle, at the wrong time, to bring up his new allegations, amending the complaint would be futile. That's because in pulling information from CMS and hiring experts whose work is already known to CMS, Relator has not given the Government anything to which it did not already have ready access. If Relator is an "original source" merely by virtue of the purported complexity of Dr. Schnelle's and his other experts' work, then so is any other member of the public who would gather any nursing facility's MDS and staffing data and supply it to these "experts" to formulate the conclusion that the facility was understaffed. That is apparently why Relator made the calculated decision to keep Dr. Schnelle and the true basis for his claims in the shadows until now. Relator's Motion for Reconsideration should be denied.

Respectfully submitted this 12th day of March 2021.

By:      /s/ W. Jerad Rissler
         Glenn P. Hendrix, Esq.
         (admitted pro hac vice)
         Georgia Bar No. 346590
         glenn.hendrix@agg.com
         W. Jerad Rissler, Esq.
         (admitted pro hac vice)
         Georgia Bar No. 142024
         jerad.rissler@agg.com
         ARNALL GOLDEN GREGORY LLP
         171 17th Street, Suite 2100
         Atlanta, Georgia 30363-1031
         404.873.8500 (Telephone)
         404.873.8501 (Facsimile)

         Andrew H. Struve, Esq.
         astruve@health-law.com
         Scott J. Kiepen, Esq.
         skiepen@health-law.com

Jordan Kearney, Esq.
jkearney@health-law.com
Matthew I. Lahana, Esq.
mlahana@health-law.com
HOOPER, LUNDY & BOOKMAN, P.C.

Jeffrey S. Adler, Esq.
jsadler@burnswhite.com
William J. Mundy, Esq.
wjmundy@burnswhite.com
BURNS WHITE, LLC
100 Four Falls, Suite 515
1001 Conshohocken State Road
West Conshohocken, PA 19428
484.567.5700 (Telephone)
610.941.1060 (Facsimile)

*Attorneys for Defendants,*
*Kindred Healthcare, Inc.; Kindred Healthcare*
*Operating, Inc.; Kindred Healthcare Services,*
*Inc.; Kindred Nursing Centers East, LLC;*
*Kindred Nursing Centers West, LLC; Kindred*
*Nursing Centers South, LLC; and Kindred*
*Nursing Centers North, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2021 the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<i><u>/s/ W. Jerad Rissler</u></i>